376 So.2d 113 (1979)
Charles Ray RIST
v.
COMMERCIAL UNION INSURANCE COMPANY.
No. 64330.
Supreme Court of Louisiana.
October 8, 1979.
Steven H. Beadles, Cook, Clark, Egan, Yancey & King, Shreveport, for defendant-applicant.
Harvey P. DeLaune, DeLaune & Blondeau, Bossier City, for plaintiff-respondent.
MARCUS, Justice.
Charles Ray Rist instituted this action to recover under a ten thousand dollar fire insurance policy issued by Commercial Union Insurance Company after his vacant home near Sarepta, Louisiana, was totally destroyed by fire on August 21, 1976. Commercial Union's answer generally denied the allegations of the petition and set forth affirmatively the defense of arson. Commercial Union also asserted a reconventional demand against Rist for $5,006.13, the amount paid to his mortgagee under a loss-payee clause in the policy.
The trial court rendered judgment in favor of Rist and against Commercial Union for $4,993.87 (balance of policy proceeds) together with legal interest and costs, finding that, although the fire was of incendiary origin, Commercial Union had failed to establish that Rist was responsible for it. The court of appeal affirmed.[1] On Commercial Union's application to this court, we granted certiorari to review the correctness of this decision.[2]
By raising the affirmative defense of arson, the insurer has the burden of establishing, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it. An insurer need not prove its case beyond a reasonable doubt; it suffices that the evidence preponderates in favor of the defense. Sumrall v. Providence Washington Ins. Co., 221 La. 633, 60 So.2d 68 (1952). In addition, we stated in Sumrall:
Proof, of course, may be and invariably is entirely circumstantial. And, in these instances, a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is *114 responsible for the fire. . . . Accordingly, the questions presented in matters of this sort are answered by the particular facts of the controversy. [cases omitted]
The sole issue presented for our determination is whether, under the facts of this case, Commercial Union established by a clear preponderance of the evidence that the fire in question was of incendiary origin and that Rist was responsible for it. If so, Commercial Union would have sustained its defense to Rist's demand and, if not, Rist would be entitled to recover under the policy.
First, we must decide whether the insurer established that the fire was of incendiary origin. Although there were no eyewitnesses as to who started the fire, a neighbor who lived across the road from the Rist home testified that the fire began about 3:00 a. m. Saturday, August 21, 1976. He stated that the fire appeared to have begun from within the house and an explosion occurred shortly thereafter causing a large window frame and several window screens to be blown from the burning structure out into the yard. Because the gas, electricity and water were not connected at the time of the fire, the state fire inspectors concluded that an accelerant had been placed in the house to cause an explosion severe enough to blow an entire window frame from the structure. Rist admitted that he had no explosives of any kind in the house prior to the fire. The trial court found, and we agree, that the evidence clearly supports the conclusion that the fire was of incendiary origin.
Next, we must determine whether the insurer proved that Rist was responsible for the fire. This presents a closer question. First, the insurer introduced proof of Rist's motive for destroying his house. The evidence was uncontradicted. Rist's house had been vacated for approximately six months before the fire because Rist had been living with his girlfriend; Rist had been unsuccessful in his attempts to sell the house for $10,000. The policy Rist purchased from Commercial Union, also for $10,000 in amount, became effective June 1, 1976, approximately two and a half months before the fire, although there was some reference by Rist that he had had insurance on the property at some time in the past. In addition, Rist had previously declared bankruptcy and had a bad credit rating requiring him to make credit purchases using his parents' name. The insurer also showed that Rist had several debts that he had been unable to pay, including a nineteen hundred dollar judgment; Rist admitted that he had tried to sell the house in order to pay off the judgment.
The record also reveals that Rist had purchased several items of new furniture, including a washer, dryer, queen-size bed, sofa and chair, and a television. Shortly before the fire, Rist moved several of the new items out of his house and replaced them with older ones. Some of the furniture was moved out as late as the Thursday or Friday before the fire on Saturday. On observing Rist moving furniture from the house, a neighbor walked over to Rist's driveway and asked Rist if he was planning to move back, to which Rist replied that he was planning to move back on Monday "if nothing don't happen."
The new washing machine was found in the storage room in the house of Rist's girlfriend after the fire. Shortly after the fire, believing he had contents coverage under his fire policy, Rist told the fire inspectors under oath that all of his new furniture and appliances were consumed in the fire. Rist's girlfriend also told the same story to the fire inspectors. After being confronted with the fact of having discovered the washing machine claimed to have been destroyed in the fire, Rist admitted that he had lied as he had taken the new washer out of his house to the house of his girlfriend. He also admitted that he had switched sofas with his girlfriend and that the new television was located at his mother's house. When Rist's girlfriend was confronted with the discovery of the washer in her storage room, she stated that she had purchased it from Rist's mother. Rist's girlfriend admitted at trial that a sofa, *115 chair, some table lamps, washer and stove had been exchanged between Rist and herself during a period of three or four weeks prior to the fire.
In rebuttal, Rist attempted to establish his whereabouts at the time of the fire. Rist and his girlfriend testified that they first went to a club with another couple, drove to Bossier City to eat, dropped the other couple off at their home and returned to the girlfriend's house between 3:00 and 3:30 a. m. The testimony of the other couple corroborated that of Rist and his girlfriend as to their activities on the night in question as well as to the time of their return home. However, an earlier statement of Rist's girlfriend, obtained shortly after the fire and introduced at trial, indicates that in answer to a question as to what she had done when she left the club, she stated: "I believe we came straight home that night, came to my house. Usually when weWe came home and we ate, probably got to bed about 2:30." Also at trial, an earlier statement of Rist was read into the record in which he stated that he and his girlfriend returned to her house "about 2:00 a. m. or 2:30" on the morning of the fire. The time at which they returned to the girlfriend's house is of utmost significance, as the drive from her house to Rist's house would normally take less than thirty minutes.
In view of the above facts, we conclude that Commercial Union established by a clear preponderance of the evidence that Rist was responsible for the fire of incendiary origin which destroyed his house. Admittedly, the proof was strictly circumstantial, but we consider that it was of such import that it will sustain no other reasonable hypothesis but that Rist was responsible for the fire.
We reach this conclusion finding first that Rist had a motive for destroying his house. His poor financial condition, inability to sell his house at a time when he no longer used it as a residence, and recent purchase of a fire insurance policy that equaled the value of his home are certainly indicative of a motive to commit arson. Additionally, the replacement of Rist's new furniture and appliances with older items a few days before the fire, combined with the attempts to disguise those acts in order to obtain a greater sum from the insurer, is most incriminating. Moreover, the earlier statements by Rist and his girlfriend that they arrived home at 2:00 or 2:30 a. m. on the morning of the 3:00 a. m. fire showed that Rist indeed had the opportunity to start the fire. We are unimpressed with Rist's denial of wrongdoing due to the previous falsehoods and inconsistencies in his testimony concerning the removal of the furniture and the time of his return to his girlfriend's house. The same can be said with regard to the testimony of his girlfriend. While the testimony of the other couple is consistent with that of Rist and his girlfriend at trial as to their whereabouts on the evening in question and the time they returned home, it is inconsistent with that of the earlier statements made by Rist and his girlfriend shortly after the fire. As a result, we are unable to place much weight on the testimony of the alibi witnesses relative to the exact time of their return home.
In sum, we find that under the facts of this case Commercial Union established by a clear preponderance of the evidence that the fire in question was of incendiary origin and that Rist was responsible for it. Hence, the affirmative defense of arson was sustained and Rist's claim under the fire insurance policy should be denied. The court of appeal erred in holding to the contrary.
Commercial Union reconvened against Rist for $5,006.13, the amount paid to the mortgagee under a loss-payee clause in the policy, under a theory of subrogation. Since the court of appeal did not reach this issue due to its finding that Commercial Union had not sustained its affirmative defense of arson, we consider it more appropriate to remand the case to that court for it to determine and decide this issue.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and set *116 aside and the case is remanded to that court for further proceedings consistent with the views herein expressed.
NOTES
[1] 367 So.2d 427 (La.App.2d Cir. 1979).
[2] 370 So.2d 574 (La.1979).