510 So.2d 759 (1987)
Paul A. CLIFTON
v.
LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY, et al.
No. 86 CA 0893.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
Rehearing Denied August 31, 1987.
Larry Green and Julian J. Rodrigue, Covington, for plaintiff-appellee.
Michael Fitzpatrick and Peter Meisner, New Orleans, for defendants-appellants.
Thomas Derveloy, Covington, for Lucy Reid Rausch, appellee.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
Paul Clifton's (plaintiff) home in Abita Springs was partially destroyed on September 17, 1982, by a fire which was indisputably of incendiary origin. His homeowner's insurer, Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau), paid off the balance due on plaintiff's *760 mortgage to Eileen P. Santana (Santana) but denied further payment under the policy because it contended the fire was set at plaintiff's behest.
Plaintiff filed suit against Farm Bureau to recover the proceeds of the insurance policy and for penalties and attorney fees under LSA-R.S. 22:658.[1] Plaintiff also sought cancellation of the mortgage on the house and return of the promissory note, naming as defendants Santana and Lucy R. Rausch, Clerk of Court of St. Tammany Parish. Farm Bureau then reconvened against plaintiff for return of the amount paid to Santana on plaintiff's behalf.
The trial court held that Farm Bureau failed to sufficiently establish its arson defense because it had not produced satisfactory evidence of a motive on the part of plaintiff. The court thus held Farm Bureau liable to plaintiff for its policy limits, as follows:

Dwelling $24,750.00, less set-off of
 (19,099.93) paid to Santana
Contents $12,500.00
Additional living $ 5,000.00, less credit for
 expenses (1,200.00) advanced to plaintiff.
 __________
 TOTAL: $21,950.07

The court found that Farm Bureau had not been arbitrary and capricious and denied plaintiff's claim for penalties and attorney fees. The court also ordered Rausch to cancel the mortgage and Farm Bureau to return the note.
Farm Bureau contends the trial court was clearly wrong in holding that it failed to prove the arson defense. Farm Bureau asserts the trial court based its decision on an erroneous standard and failed to consider adequately that plaintiff had financial motive to set the fire, withdrew personal belongings from his house immediately before the fire, and exaggerated his contents loss claim.
The trial court correctly stated the standard an insurer must meet to prove the arson defense:
According to the [oft-cited] rule given in Rist v. Commercial Union Ins. Co., 376 So.2d 113 (La.1979), an insurer raising the affirmative defense of arson must meet a two-pronged test: 1) that the fire was of incendiary origin, and 2) that the plaintiff-claimant was responsible for the fire. There had been some confusion prior to Rist as to the burden of proof on the insurer in such a case but Rist made it clear that the evidence need only preponderate in the favor of the defense in order for them to succeed, as opposed to some higher burden. Further, the Rist court established that proof of arson could be completely circumstantial in nature, with a verdict for the insurer justified "where the evidence is of such impact that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire." Rist, supra at 113-114. See also Fontenot v. Hanover Ins. Co., 473 So.2d 145, 148 (La.App.3rd Cir.1985), writs denied 475 So.2d 1109, 1110 (La.1985); Childs v. Zurich American Ins. Co., 476 So.2d 403, 407 (La.App.2nd Cir.1985). It is also the law of Louisiana that satisfactory proof, the nature of which is dependent on the specific facts of a particular case, of a motive on the part of the insured to set the fire fulfills the second prong of the arson-defense test. Fontenot, supra at 148.
It is undisputed that the fire was of incendiary origin. Arthur Lott, who had earlier pleaded guilty to simple arson with intent to defraud, testified that he set the fire. Three witnesses qualified as experts in the field of the origin and causation of fires also testified that the fire was intentionally set.
The first prong of the test being met, Farm Bureau had only to meet the second prongto prove by a preponderance of the evidence that plaintiff was responsible for the fire. Farm Bureau contends that it fulfilled this second prong by proving that plaintiff had a financial motive to set the *761 fire. Plaintiff's bank records introduced at trial show that plaintiff's checking account was consistently overdrawn, and plaintiff testified he had no savings account. Plaintiff's former banker testified, however, that plaintiff always covered his overdrafts and that he had a good reputation with the bank as far as his loan business was concerned. In fact, plaintiff had received a $1,500.00 loan from the bank just days before the fire. There was no proof that plaintiff had any large outstanding debts other than the mortgage on his home.
The mere fact that a plaintiff would benefit financially by collecting under the insurance policy has been held insufficient to establish a financial motive for arson. Bradford v. Canadian Fire Insurance Co., 150 So.2d 630 (La.App.3d Cir.1963). Furthermore, there was no proof in the record that plaintiff would benefit financially from the fire. Plaintiff and his father, a contractor, testified that they had recently renovated the house, reinsulating, rewiring, and replacing the light fixtures and the ceiling. A real estate broker who had examined the house a few months before the fire testified that in her opinion the house was worth approximately $30,000.00, excluding the lot, although it was insured for only $25,000.00.
Farm Bureau contends the trial court failed to consider adequately the evidence which supports its arson defense. Plaintiff managed a plant nursery. Several months before the fire plaintiff had been ordered by his employer to fire Lott, a laborer at the nursery, because Lott had been convicted of burglary. Lott testified that he and plaintiff remained friends, however. Plaintiff testified that Lott came by his house on several occasions and even spent the night at plaintiff's house when Lott and his parents were having a dispute. Thus, Farm Bureau argues that Lott would have had no reason to set the fire had he not been paid to do so by plaintiff.
Furthermore, Lott testified that plaintiff paid him $500.00 and gave him two stereo speakers to set the fire. There was no sign of forced entry to plaintiff's home, and police found the key to plaintiff's house and two of plaintiff's stereo speakers in Lott's apartment. Plaintiff had received a $1,500.00 loan within days of the fire and told police that $500.00 in cash disappeared from his home during the fire.
An additional fact supporting the arson defense is that plaintiff's most prized possessions were not destroyed in the fire. An antique violin, an antique armoire, and plaintiff's largest horticulture books had been removed from the house shortly before the fire. Plaintiff's homeowner's insurance policy also escaped the fire.
Plaintiff had explanations for all of the these remarkable coincidences, however. He denied hiring Lott to set the fire. He testified that he sold the speakers to Lott five days before the fire and had been holding them for Lott; that one of his door keys disappeared about the time Lott stopped by his house to use the bathroom a few days before the fire; that he had removed some of his things from the house because he was building a credenza in the area of the house where he kept those things; and that his insurance policy had been in his safe deposit box.
The credibility of Lott, defendant's star witness, was poor, at best. Lott is a convicted felon who admitted perjuring himself in his deposition and sworn statement. He gave four different versions of his role in the fire, and his testimony that plaintiff paid him for setting the fire in the presence of Peter Brissalaro was rebutted by Brissolaro. Although the facts surrounding plaintiff's role in this fire are somewhat suspicious, we cannot say the trial judge was clearly wrong in finding that Farm Bureau failed to sufficiently prove the arson defense.
Farm Bureau also contends the trial court was clearly wrong in failing to consider its additional defense of fraud. Farm Bureau asserts that plaintiff intentionally "padded" his contents claim in an attempt to defraud Farm Bureau by overvaluing the contents and by listing property not in the house at the time of the fire. Farm Bureau bases this assertion on the fact that plaintiff listed replacement cost of the contents rather than depreciated value and *762 that Lott testified he saw plaintiff's stereo and clothing in the trunk of plaintiff's car after the fire.
Misrepresentations in a proof of loss given to a fire insurer will void coverage under the policy only if the insured knowingly and intentionally makes such misrepresentations with the intent to deceive and defraud the insurer. Fraud will never be presumed from acts which may be accounted for on the basis of honesty and good faith. Strauss v. Insurance Company of North America, 157 La. 661, 102 So. 861 (1925). Plaintiff testified that he listed the replacement cost of his property on the advice of his insurance agent, and Farm Bureau submitted no evidence at trial to rebut plaintiff's testimony. Furthermore, Lott's testimony relative to the contents of plaintiff's truck after the fire was directly contradicted by the testimony of Peter Brissolaro. Thus, the trial court did not err in finding coverage under the policy.
Farm Bureau also assigns as error the trial court's award of the full policy limits of $25,000.00 less the $250.00 deductible for damage to the dwelling. Two contractors testified as to the cost to repair or replace plaintiff's home. Billy Broyard, plaintiff's expert, testified the house was a total loss because of smoke and fire damage and would cost $28,160.00 to rebuild. Ken Martin, defendant's expert, testified the house could be repaired for $17,340.00, but he admitted that figure was just a rough estimate. Where there is considerable variance in estimated damages which renders calculation thereof difficult, much discretion is afforded the trier of fact. Hughes v. New Orleans Public Service, Inc., 485 So.2d 642 (La.App.4th Cir.1986); Carter v. Gulf States Utilities Co., 454 So.2d 817 (La.App. 1st Cir.1984). We find no abuse of the trial judge's much discretion in this case.
Farm Bureau's final assignment of error is that the trial court improperly awarded plaintiff $3,800.00 for additional living expenses. The Farm Bureau policy provided the following coverage:
COVERAGE DADDITIONAL LIVING EXPENSE
If a property loss covered under this policy renders the premises untenantable, this policy covers the necessary increase in living expense incurred by the Named Insured to continue as nearly as practicable the normal standard of living of the Named Insured's household for not exceeding the period of time required:
1. to repair or replace such damaged or destroyed property as soon as possible; or
2. for the Named Insured's household to become settled in permanent quarters; whichever is less.
....
Plaintiff moved in with his parents after the fire. He told Farm Bureau he was paying rent to his parents, and Farm Bureau advanced $1,610.00 to him or on his behalf for living expenses from September through December, 1982. Plaintiff testified he moved into the Vermont Apartments in March, 1983. He submitted no proof of additional expenses incurred prior to March, 1983, but introduced cancelled checks and receipts for apartment deposit and thirteen months rent from March 4, 1983, through March 31, 1984, totalling $3,977.50. Apparently plaintiff moved into the Bocage Royale Apartments in April, 1983, where he lived for at least a year. The trial judge, without explanation, awarded plaintiff the policy limits of $5,000.00 for additional living expenses, less a credit of $1,200.00 for sums previously paid. Farm Bureau contends no additional sums were due under the policy.
Since plaintiff's house was declared a total loss, plaintiff was due additional living expenses during the time required to rebuild the house or to become settled in permanent quarters, whichever was less. There was no evidence that plaintiff attempted to rebuild the house; he testified that he left the premises as they were for over a year after the fire. Thus, the applicable period is the length of time it took for plaintiff to become settled in permanent quarters. Plaintiff apparently established permanent quarters in the Bocage Royale *763 Apartments in April, 1983, and the trial judge's award to plaintiff of additional living expenses beyond that time was an abuse of discretion. Thus, we reduce the award for additional living expenses from $3,800.00 to $760.00, the amount of plaintiff's March rent at the Vermont Apartments and the April rent and deposit at Bocage Royale.
For the foregoing reasons, the judgment of the trial court is amended, and as amended, affirmed, at defendant's cost.
AMENDED, AND AS AMENDED, AFFIRMED.
CARTER, J., dissents being of the opinion that the trial judge was clearly wrong in not finding that plaintiff was responsible for the fire loss.
NOTES
[1] Plaintiff also prayed for damages against Farm Bureau for conversion because it paid a portion of the proceeds of the policy directly to Santana under the loss payable clause of the policy. The trial court granted partial summary judgment dismissing that claim, which was not appealed.