CRAIN, Judge.
Billy F. Hawkins and his wife, Robbie Sue Mason Hawkins, purchased by credit deed a commercial building and the immovable property on which it was located. The purchase price was $315,250. Hawkins paid $50,000 in cash and signed two promissory notes payable to sellers in the sums of $209,000 and $56,250 respectively. The property was purchased from Mr. and Mrs. Glen Reid and Mr. and Mrs. Glen Gabriel Reid. The Reids had several years earlier executed a promissory note in the sum of $200,000 and a mortgage on the property in favor of First Guaranty Bank (Bank). Thus, the Bank held the first mortgage on the property purchased by Hawkins from the Reids.
Hawkins established a restaurant on the premises, the Open Hearth Steak House. The restaurant was in operation for about three months when in the early morning hours of October 25, 1987, the building and its contents were damaged by fire. Hawkins had previously obtained two commercial fire insurance policies on the premises which were in effect at the time of the fire: one from Pelican State Mutual Insurance Company (Pelican) and another from Certain Companies and/or Certain Underwriters at Lloyds, London (Lloyds). The policy limits on both policies were identical ($37,-500 for contents and $100,000 on the building.)
The Bank instituted an action against the insurers for payment of its claim as mortgagee, and Hawkins intervened. The insurers paid to Glen Reid and the Bank the aggregate sum of $158,577. The Reids and the Bank in turn partially assigned their claims against the Hawkinses to the insurers. Defendants, as partial assignees, instituted a third party action against the Hawkinses. Upon the Bank's motion its action against the insurers was dismissed. Trial proceeded on the intervention and the third party action. After trial on the merits the jury returned a special verdict finding that defendants did not establish that the fire was caused by arson, nor did defendants establish that Hawkins was ultimately responsible for its cause. The jury further found that defendants were not entitled to recover from Hawkins for their payments to the mortgagees. Hawkins was awarded $18,000 for damage to the structure (which was in addition to that previously paid to the mortgagees) and $75,000 for damage to the contents. No statutory penalties and attorney’s fees were awarded to Hawkins. Judgment was rendered in conformity with the special verdict. From this judgment defendant insurers appeal alleging as error the court’s refusal to allow the jury to consider defendants’ defense of fraud and false swearing; the jury’s determination that defendants had not established an arson defense; the judgment casting all defendants for the full amount of the judgment rather than casting defendants in judgment in proportion to their various policy limits.
JURY CONSIDERATION OF DEFENSE OF FRAUD AND FALSE SWEARING
In this assignment of error defendants contend that Hawkins intentionally, *1308 fraudulently and falsely inflated his claim for damages on the contents and that his actions in so doing gives rise to the defense of fraud and false swearing which can operate to void the entire policy. Defendants requested that pursuant to La.R.S. 22:692.1, the court submit to the jury a special interrogatory on this issue. Defendants urge that the trial court’s refusal to do so, despite defendants’ objections, constitutes reversible error.
La.R.S. 22:691(F)(2) prescribes the standard provisions of a fire insurance contract, and provides in pertinent part:
Concealment, fraud — This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.
La.R.S. 22:692.1 provides:
Assertion of a defense of material misrepresentation made by an insured subsequent to loss by fire as to the value of the contents of a residence or business shall not entitle an insurer to void total coverage of the policy based on such misrepresentation, unless a court of competent jurisdiction determines and adjudicates otherwise.
Pursuant to statutory authority the named insured’s fraud and false swearing regarding the value of the contents when submitting a claim on a fire insurance policy is a valid defense available to the insurer and may serve to void total coverage of the policy and is a factual determination which must be made by the trier of fact. The trial judge refused to submit this issue to the jury because of a mistaken interpretation of the applicable law, i.e., the insurer must have detrimentally relied upon such intentional misrepresentation. We find nothing in the statutes and the jurisprudence which requires detrimental reliance by the insurer in order for the insurer to avail itself of this defense. Thus the trial judge erred in not submitting this issue to the jury.
If a jury is prevented from rendering a verdict on a pertinent finding of fact, the reviewing court may render a judgment on the record if the record is otherwise complete. Steinbach v. Barfield, 428 So.2d 915 (La.App. 1st Cir.), writ denied, 435 So.2d 431 (La.1983).
The policy limits of each policy was $37,-500 for contents and $100,000 on the building. Hawkins submitted two identical proof of loss statements (one to Pelican and one to Lloyds) estimating the cash value of the contents and building at $408,324 and the whole loss and damages at $408,324. Hawkins also submitted to defendants an inventory of the contents listing either the cash value or replacement value of each item. Hawkins claimed damages for the full $137,500 limits of each policy. Defendants do not contest that the contents were valued at approximately $155,000 as indicated in the inventory.
Hawkins stated that it was his understanding that defendants requested an inventory or list of all contents and their replacement costs which is what he provided. He further stated that several items on the inventory list were not completely destroyed and were reusable (although some of these items would have to be repaired before reuse). He did not intend to indicate that each item included in the inventory list was totally destroyed, although almost everything was damaged to some extent, even if by water or smoke. The estimated value of these excepted items was $50,000. These are the items which defendants contend were the subject of the fraud and false swearing by Hawkins in his alleged attempt to inflate the insurance claim from which defendants contend total coverage on the policies should be voided.
Misrepresentations in a proof of loss will void coverage “only if the insured knowingly and intentionally makes such misrepresentations with the intent to deceive and defraud the insurer. Fraud will never be presumed from acts which may be accounted for on the basis of honesty and good faith.” Clifton v. Louisiana Farm Bureau Casualty Insurance Company, *1309 510 So.2d 759, 762 (La.App. 1st Cir.1987). After de novo review of the evidence, we find that defendants did not meet their burden of proving that Hawkins intentionally attempted to defraud defendants.
The uncontested value of the lost or destroyed contents was at least $100,000. The combined policy limits coverage on contents total $75,000 which is $25,000 less than the actual content damages suffered by Hawkins. Hawkins did not attempt to collect more money than his actual loss. In Sbisa v. American Equitable Assurance Co. of New York, 202 La. 196, 11 So.2d 527 (1942), despite possible false swearing by the insured to “pad” his insurance claim, the Louisiana Supreme Court refused to void the insurance policy reasoning that the true loss of the insured was in excess of the face value of the policy thus the insured had not attempted to collect more money than his actual loss. See also Bohn v. Louisiana Farm Bureau Mutual Insurance Company, 482 So.2d 843 (La.App. 2d Cir.), writs denied, 486 So.2d 750, 752 (La.1986).
Accordingly, in light of the jurisprudence discussed above and of the evidence presented at trial we conclude that the insurance policies were not voided.
ARSON DEFENSE
In the second assignment of error defendants contend that the trier of fact was manifestly erroneous in determining that defendants had not proved that the fire was of incendiary origin and that the fire was caused by Hawkins or persons acting on his behalf.
After a careful review of the record we conclude that the evidence overwhelmingly establishes that the fire was caused by arson. However, in order to establish the arson defense defendants must also prove that Hawkins either set the fire himself or caused an agent of his to set it. The record establishes that the doors and windows were locked or secured when the fire department arrived at the scene and the firemen had to cut or force open two doors through which they could enter the burning building. It is undisputed that there were five known keys to the building which were held by various employees, including Hawkins and his two sons. The business had operated at a loss for the three months that it was in operation. Billie Sue Smith managed the restaurant from the date it opened until the fire. She was never paid a salary, but was to receive a set percentage of profit from the business once it began to realize a profit. She testified that during the last two or three weeks of operation business was beginning to pick up and several holiday banquets and parties had been scheduled. She stated that Hawkins did relate to her his concerns that the business would “make it.” Ms. Smith testified that she secured the building at around 11:30 p.m. on the night of the fire.
Hawkins had left the establishment at approximately 5:30 p.m. He testified that he was at home in bed at midnight when he received a telephone call from one of his sons who had learned that the building was on fire.
There was no direct evidence linking Hawkins to the blaze. There was only evidence regarding the shaky financial status of the business, and the $3000 monthly note on the property payable to the Reids. The fact that Hawkins might benefit financially by collecting under the insurance policy is not sufficient to establish a financial motive for arson. Clifton v. Louisiana Farm Bureau Casualty Insurance Company, 510 So.2d at 761. Thus, defendants did not establish the arson defense.
JUDGMENT
In the third assignment of error defendants contend that in the event the judgment is affirmed, the judgment should be amended to apportion the loss between the insurers to the extent of their individual participation.
As discussed previously two policies were issued to Hawkins — one from Pelican State and the second from Lloyds. The policy limits of both policies are identical. The judgment did not apportion or fix ratios of participation among the Lloyds underwriters and between Lloyds and Pelican State.
*1310 La.R.S. 22:691(F) provides in pertinent “Pro rata liability — This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.” Prior to its amendment by La.Acts 1988, No. 190, Sec. 1, effective July 1, 1988, former La.R.S. 22:499 allowed Lloyds underwriters to limit their total liability by insurance contract to the proportionate part of the loss represented by the ratio which its subscription paid-in bears to the total assets contributed by the several underwriters. Each underwriter was allowed to be responsible solely for his own liability as fixed in the insurance contract. This was the law in effect during the applicable policy period.
Thus, Pelican’s liability on the contents is $37,500. The remaining $37,500 policy limits on contents on the Lloyds policy is to be prorated among the Lloyds underwriters in proportion to their participation. The same rule applies to the $18,000 building damage award. The judgment of the trial court is amended to pro rate liability as follows:
Pelican o o
Lloyds o o
English and American 14.92%
Bryanston Insurance Company Ltd. 18.65%
Bishopsgate Insurance Company Ltd. 5.84%
Sphere Drake Insurance PLC 27.02%
Aegon (UK) Insurance Co. 18.65%
Orion 14.92%
Otherwise the judgment is affirmed. Costs are assessed against defendants.
AMENDED AND AFFIRMED.
SHORTESS, J., concurs in result only.