594 So.2d 455 (1991)
L.D. WILLIAMS
v.
UNITED FIRE AND CASUALTY COMPANY.
No. 90 CA 2129.
Court of Appeal of Louisiana, First Circuit.
December 27, 1991.
*456 Roy M. Maughan, Jr., Baton Rouge, for plaintiff-appellant L.D. Williams.
John Jewell Pace, Baton Rouge, for petition in interventionJoy L. Cazes.
Glen Scott Love, Baton Rouge, for defendant-appellee United Fire Cas. Co.
Before WATKINS, CARTER and FOIL, JJ.
*457 CARTER, Judge.
This is an appeal from a trial court judgment dismissing plaintiff's theft-loss claim against his insurer and granting the insurer's reconventional demand for recovery of an advance made to plaintiff.

FACTS
On August 24, 1986, plaintiff's sister, Deborah Lynn Cashio, and her husband Brian David Cashio, were feeding plaintiff's dog while plaintiff was out of town when they noticed that a back door of plaintiff's residence was ajar. The Cashios went to a nearby convenience store where Ms. Cashio called plaintiff who instructed her to report the suspected burglary to the police. The Cashios flagged down a policeman, and the scene of the alleged burglary was soon investigated by the police.
After inspecting the first floor of the residence, the police officer sat on a small loveseat while Ms. Cashio listed certain items that she noticed were missing from the home.[1]
On or about August 26, 1986, the burglary was reported by telephone to plaintiff's insurer. On September 10, 1986, representatives from the insurance company took a tape recorded statement from plaintiff and photographed his home. The home was almost completely bare of all furnishings when the insurance company employees inspected and photographed it. Curtains remained in one room, and a mattress and some debris lay on the floor of another room, but otherwise the rooms photographed were empty. Since the home was without a refrigerator and other appliances generally considered essential for a normal lifestyle, the insurance company representatives advanced plaintiff $5,000 pending further processing of his claim. On October 9, 1986, plaintiff submitted a sworn statement to the insurance company indicating that, as a result of the burglary of his home, he suffered a loss in excess of $77,000, the insurance policy limits.[2]
Insurance company representatives later discovered that the police officer initially investigating the burglary found a scene quite different from the one photographed by the insurance company employees. The police officer found no empty rooms nor any obvious indication that the home had been "ransacked." The insurance company representatives concluded that the plaintiff had intentionally claimed compensation for some items which were removed from the home by plaintiff after the burglary.
The insurance policy provided, in pertinent part:
SECTION IPERILS INSURED AGAINST
. . . . .
9. Theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.
This peril does not include loss caused by theft:
a. committed by an insured; ...
SECTION I AND IICONDITIONS
. . . . .
2. Concealment or Fraud. We do not provide coverage for an insured who has:
a. intentionally concealed or misrepresented any material fact or circumstance; or
b. made false statements or engaged in fraudulent conduct;
relating to this insurance.
The insurance company denied plaintiff's claim. Plaintiff then filed suit contending that the insurance company was arbitrary *458 and capricious in denying his claim. Plaintiff sought recovery for his losses, attorney's fees, and penalties. The insurance company reconvened to recover the $5,000 advance paid to plaintiff. One of plaintiff's judgment creditors, Ms. Joy L. Cazes, intervened. Eventually, to secure payment of the judgments, plaintiff assigned to Ms. Cazes his rights to the instant litigation to the extent of his indebtedness to her.
The jury, in response to interrogatories, found that plaintiff's home had been burglarized, but that plaintiff failed to prove that, as a result of the burglary, he lost all of the items claimed. The jury found that during the investigation of the claim, the plaintiff made material misrepresentations with the intent to defraud the insurance company; therefore, plaintiff was not entitled to recover from the insurance company. Judgment was rendered denying plaintiff's claim and granting the insurance company's reconventional demand.[3]
Plaintiff appeals, assigning the following errors:[4]
1. The court erred in instructing the jury that any misrepresentation or false statement made in the investigation of a claim would void the policy of insurance.
2. Submitting the following special interrogatory to the jury was reversible error:
Do you find that the Defendant has proven by a preponderance of the evidence that the plaintiff knowingly and intentionally made material misrepresentations during the investigation of the claim and/or in Plaintiff's proof of loss with the intent to deceive and defraud United Fire and Casualty Company?
3. The jury verdict should be reversed because there was no proof that plaintiff's actual loss was less than defendant's policy limits, even if plaintiff claimed more on the proof of loss than he actually lost.
4. The defendant did not carry its burden of proof to establish that the property claimed lost by theft was not actually lost by theft.
5. The court committed reversible error by admitting evidence of plaintiff's misdemeanor convictions.
6. The court committed reversible error by admitting evidence of the plaintiff's felony convictions for crimes committed after the date of the proof of the loss.
7. The jury's verdict is not supported by the law or the evidence but is grounded in prejudice.

ASSIGNMENTS OF ERROR NOS. 1-3
Assignments of error listed as numbers 1-3 above raise essentially the same contention: that false statements do not void coverage if plaintiff's valid claims equal or exceed the total amount demanded.
Prior to its submission to the jury, plaintiff objected to the following jury instruction:
If you find that the plaintiff gave false answers or information to United Fire and Casualty Company in its investigation of this claim and that the plaintiff gave such false answers with the intent to deceive and defraud United Fire and Casualty Company, then you must return a verdict in favor of United Fire and Casualty Company.
Plaintiff also objected to the following interrogatory before it was posed to the jury:
Do you find that the defendant has proven by a preponderance of the evidence that the plaintiff knowingly and intentionally made material misrepresentations during the investigation of the claim and/or in plaintiff's proof of loss with the intent to deceive and defraud United Fire and Casualty Company?
Plaintiff avers that false claims do not void coverage if valid claims exist equalling *459 the amount demanded. Plaintiff argues that jury instructions and interrogatories suggesting the contrary are reversibly erroneous, citing Sbisa v. American Equitable Assur. Co. of New York, 202 La. 196, 11 So.2d 527 (1942). We disagree.
In Sbisa v. American Equitable Assur. Co. of New York, 11 So.2d at 530-31, the Louisiana Supreme Court stated:
From the record as well as the commissioner's report, it appears that there was no fraudulent over-valuation of the truck and no false swearing as to its cost by the plaintiff and that the true loss sustained by him exceeded the amount of the policy and, therefore, the plaintiff had not attempted to collect more than his actual loss. In fact, if he had collected, he would not have received the true amount of his loss.
In the light of the decisions of this Court above referred to and under the facts and circumstances of this case, it is our opinion that the insurance policy in question was not voided and plaintiff's claim thereunder not forfeited by his acts and that he is entitled to recover the face value thereof.
In the case sub judice, the complained of jury interrogatory asked whether plaintiff intentionally misrepresented his claim with the intent to deceive and defraud defendant. The jury was instructed that if an intentional misrepresentation was made with the intent to deceive and defraud the defendant, the jury was required to return a verdict for the insurance company.
This court recently found that failure to give a similar jury instruction upon request was erroneous. In First Guaranty Bank v. Pelican State Mutual Insurance Company, 590 So.2d 1306 (La.App. 1st Cir. 1991), we expressly stated that an insurance company need not have detrimentally relied on the false statement in order to raise a plaintiff's false statement as a defense to a claim. This court stated:
Pursuant to statutory authority the named insured's fraud and false swearing regarding the value of the contents when submitting a claim on a fire insurance policy is a valid defense available to the insurer and may serve to void total coverage of the policy and is a factual determination which must be made by the trier of fact. The trial judge refused to submit this issue to the jury because of a mistaken interpretation of the applicable law, i.e., the insurer must have detrimentally relied upon such intentional misrepresentation. We find nothing in the statutes and the jurisprudence which requires detrimental reliance by the insurer in order for the insurer to avail itself of this defense. Thus the trial judge erred in not submitting this issue to the jury.
590 So.2d at 1308.[5]
The issue of whether the plaintiff intentionally overstated his claim and therefore was not entitled to coverage was properly before the jury regardless of whether the sum of the plaintiff's valid claims happened *460 to equal or surpass the total amount claimed.
Plaintiff's assignments of error numbers 1-3 are without merit.

ASSIGNMENT OF ERROR NO. 4
Plaintiff contends that the insurance company failed to show that the items claimed were not lost by theft.
The insurer bears the burden of proving the defense of intentional material misrepresentation in order to avoid coverage. Darby v. Safeco Insurance Company of America, 545 So.2d 1022, 1026 (La. 1989). Misrepresentations in a proof of loss given to an insurer will void coverage under the policy only if the insured knowingly and intentionally makes such misrepresentations with the intent to deceive and defraud the insurer. Fraud will never be presumed from acts which may be accounted for on the basis of honesty and good faith. Clifton v. Louisiana Farm Bureau Casualty Insurance Company, 510 So.2d 759, 762 (La.App. 1st Cir.1987). The plaintiff bears the burden of proving that he is entitled to penalties and attorney's fees as a result of the arbitrary and capricious denial of the claim. Rushing v. Dairyland Insurance Company, 449 So.2d 511, 514 (La.App. 1st Cir.), affirmed, 456 So.2d 599 (La.1984).
The following interrogatory was posed to the jury without objection:
Do you find that the Plaintiff has proven by a preponderance of the evidence that he suffered a theft loss of all the items listed on his proof of loss?
Two jury members responded "yes" to this interrogatory, and ten responded "no."
The parties disputed whether the plaintiff made it clear to the insurance company representatives that the condition of the house had been considerably altered since the burglary. The plaintiff testified that he told the insurance company representatives that some furnishings had been put in storage for safekeeping after the burglary. The transcript of the taped statement given by the plaintiff to the insurance adjusters does not show that plaintiff mentioned that some items were moved to storage. At a deposition taken November 7, 1986, plaintiff failed to mention that some items were in storage. During the course of the investigation of his claim, plaintiff made no effort to show precisely what was in storage or to reduce his claim accordingly.
Plaintiff attempted to document his claim not only by the condition of the house presented to the insurance adjusters and a taped verbal statement, but also in an extensive list of items lost submitted by the plaintiff. The plaintiff corrected the list by scratching off six items which his wife or ex-wife had in her possession.[6] However, the remaining list of over 200 items describes sufficient furnishings for the entire first floor of plaintiff's home.
The police officer who investigated the scene immediately after the burglary testified that he found furniture in every room. The officer expressly remembered dining room furniture, leather couches, and an oak table in the den. The officer testified that the house did not appear to have been burglarized or ransacked. The plaintiff's sister and brother-in-law indicated that some furniture was left in the house after the burglary. Plaintiff's brother-in-law said "bits and pieces" of what once was a "show place" remained after the burglary. According to plaintiff's sister, the house appeared empty to anyone familiar with its contents before the burglary.
Evidence was presented by the defendants to show plaintiff was experiencing financial difficulties and that foreclosure proceedings against him had commenced at the time of the burglary.
The jury concluded that the plaintiff failed to prove the large loss claimed was the result of theft and that the insurance *461 company proved plaintiff materially misstated his claim with the intent to defraud and deceive the insurance company. The jury's findings of fact cannot be reversed unless manifestly erroneous. The findings in this case are not manifestly erroneous. An appellate court should not disturb reasonable evaluations of credibility and reasonable inferences of fact made by a jury when the record as a whole reveals a reasonable basis for the finding in the trial court. Darby v. Safeco Insurance Company of America, 545 So.2d at 1026.
Plaintiff's assignment of error number 4 lacks merit.

ASSIGNMENTS OF ERROR NOS. 5 AND 6
Plaintiff made a motion in limine urging that the defendant be precluded from introducing certain "prejudicial, irrelevant and/or inadmissible" evidence. A hearing on plaintiff's motion in limine was held prior to trial by jury. The trial judge excluded some evidence, but found that certain evidence bearing on the plaintiff's credibility was admissible.

Felony Convictions
Evidence that the plaintiff was convicted in February, 1988 of attempted possession of cocaine, a felony, was admitted to attack his credibility pursuant to LSA-C.E. art. 609 A(1).
LSA-C.E. art. 609 A states:
A. General civil rule. For the purpose of attacking the credibility of a witness in civil cases, no evidence of the details of the crime of which he was convicted is admissible. However, evidence of the name of the crime of which he was convicted and the date of conviction is admissible if the crime:
(1) Was punishable by death or imprisonment in excess of six months under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party; or
(2) Involved dishonesty or false statement, regardless of the punishment.
Plaintiff argues that, because the felony conviction occurred two years after the alleged burglary, evidence of the conviction should have been excluded as it did not reflect on the plaintiff's credibility at the time of the claimed loss.
LSA-C.E. art. 609 B states:
B. Time limit. Evidence of a conviction under this Article is not admissible if a period of more than ten years has elapsed since the date of the conviction.
Recent felony convictions may be used to attack credibility, even if the conviction occurred since the incident in question, because the witness's current credibility, as well as his credibility at the time of the incident, are at issue.[7]
Plaintiff also complains that evidence of the felony conviction was prejudicial and of low probative value as it was not a crime of dishonesty or false statement. LSA-C.E. art. 609 A does not state that felony convictions used to attack credibility must involve false statements or dishonesty.
The only mention of plaintiff's attempted cocaine possession conviction took place as follows:
Q. And finally, Mr. Williams, isn't it true that on February 10, 1988, that you were convicted of attempted possession of cocaine?
A. Yes, sir, that's true.
We find no error in the admission of this evidence.

Misdemeanor Convictions
Evidence of several misdemeanor convictions was admitted to attack the plaintiff's credibility. Evidence of two misdemeanor convictions was admitted because, *462 in his deposition, plaintiff denied any prior criminal conviction. Defendant argues that the evidence of these convictions was properly admitted to impeach the plaintiff who made inconsistent statements concerning the convictions. Evidence of another misdemeanor conviction was admitted as involving dishonesty or misstatement.

A. Prior Inconsistent Statements
In 1986, the plaintiff was deposed by the insurance company. At the deposition, the plaintiff stated that he had never been convicted of any crimes. The plaintiff had actually been convicted of a misdemeanor marijuana possession charge and a misdemeanor improper telephone communications charge. The trial court ruled that evidence of the plaintiff's untrue deposition statements concerning the marijuana and telephone communications convictions was admissible as evidence of character and credibility.
The following exchange took place at trial between the plaintiff and counsel for defendant:
Q. Mr. Williams, when you were in my office in 1986 and I was asking you questions, I specifically asked you, sir, whether you had up to that time ever been indicted or convicted of a crime, and you responded to me that you had not. Do you recall that testimony?
A. [by Mr. Williams] Yes, sir.
Q. That was not true, was it, sir?
A. No, sir, it wasn't.
Q. In fact, at that time, you had been convicted in April of 1984 of possession of marijuana; isn't that correct?
A. Yes, sir.
Q. And in 1982, you had been convicted of improper telephone communications?
A. Yes, sir.
Q. The answers that you gave to me in your statement, your deposition, as to whether you had been convicted or indicted, were not true?
A. Yes, sir, that's true.
Evidence of a witness' prior inconsistent statements is admissible when offered to attack his credibility unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of consumption of time, confusion of the issues, or unfair prejudice. LSA-C.E. art. 607 D(2).[8] A witness may be confronted with his own prior statement which is inconsistent with his current testimony when the proper foundation has been laid.
LSA-C.E. art. 613 provides:
Except as the interests of justice otherwise require, extrinsic evidence of bias, interest, or corruption, prior inconsistent statements, conviction of crime, or defects of capacity is admissible after the proponent has first fairly directed the witness' attention to the statement, act, or matter alleged, and the witness has been given the opportunity to admit the fact and has failed distinctly to do so.
The plaintiff's denial of the two misdemeanor convictions under oath at his deposition and his conflicting statement at trial clearly reflect the plaintiff's credibility.
Although at trial the plaintiff truthfully admitted his misdemeanor convictions, "[t]he theory of attack by prior inconsistent statements is not based on the assumption that the present testimony is false and the former statement true but rather upon the notion that talking one way on the stand and another way previously is blowing hot and cold, and raises a doubt as to the *463 truthfulness of both statements." C. McCormick, McCormick on Evidence § 34 at 74 (3rd ed. 1984). The evidence of plaintiff's statements concerning possession of marijuana and improper telephone communications convictions was used to show that the plaintiff made prior inconsistent statements and that the statement made at the deposition was false. Therefore, evidence of the plaintiff's statements concerning the misdemeanor convictions that occurred prior to the deposition and were denied by plaintiff in the deposition were clearly admissible under LSA-C.E. art. 607 D(2).

B. Conviction Involving Dishonesty or False Statement
The plaintiff also sought to exclude evidence of another misdemeanor of which he was convicted after his deposition. The plaintiff had a romantic and business relationship with Ms. Cazes, the intervenor in this case. At one point, the plaintiff and Ms. Cazes argued in a restaurant parking lot. The plaintiff pushed Ms. Cazes down and took her purse.[9] The plaintiff eventually pleaded guilty to misdemeanor charges of simple battery and unauthorized use of a movable arising out of the incident. The trial court found in the case sub judice that evidence of the battery conviction was inadmissible, but that evidence of the unauthorized use of a movable conviction arising from the purse taking was admissible as it involved dishonesty or misstatement as described in LSA-C.E. art. 609 A(2).
LSA-C.E. art. 609 A(2) is modeled on Federal Rule of Evidence 609(a)(2). The nature of specific offenses properly included within the phrase "dishonesty and false statements" as expressed in Federal Rule of Evidence 609(a)(2) and similar state evidence rules has been subject to debate. In many jurisdictions, crimes involving the use of force such as assault, battery, or robbery are not treated as crimes of dishonesty or false statements per se. See C. McCormick, McCormick on Evidence § 43 at 5-6 (3rd Ed., Supp.1987).
Although the misdemeanor unauthorized use of a movable conviction may show more about plaintiff's character generally than his credibility, we do not find that the admission of this evidence was prejudicial error warranting reversal. The facts and circumstances in the case sub judice so strongly support the jury verdict that this evidence did not affect the outcome of the case. See Clement v. Armoniet, 527 So.2d 1004, 1010 (La.App. 5th Cir.), writ denied, 531 So.2d 475 (La.1988).
There was ample evidence that the plaintiff was not credible. Plaintiff's taped statement to the insurance adjusters contradicts his assertion that he told the adjusters he had stored some of the furniture. Although the plaintiff told the insurance company employees that he was having no significant financial problems at the time of the claimed loss, the evidence showed that plaintiff was six months behind on his mortgage payments at the time of the burglary and needed over $6,000 to bring his debt current. Foreclosure proceedings had been commenced against the plaintiff on July 8, 1986, about one month before the burglary. Ms. Cazes, the intervenor, testified that on June 23, 1986, approximately two months before the burglary, she sued plaintiff for $30,000.
The jury's finding of intentional misstatement of the loss is well supported by the record. The exclusion of evidence of the misdemeanor conviction for unauthorized use of a movable would not have altered the result reached by the jury.
Plaintiff's assignments of error numbers 5 and 6 lack merit.

ASSIGNMENT OF ERROR NO. 7
Plaintiff complains that the jury verdict was contrary to the law and the evidence. As discussed above, the finding of the jury was well supported by the evidence. After viewing all of the evidence, *464 the jury found that plaintiff intentionally misrepresented his claim to a degree justifying denial of coverage. The evidence excluded any reasonable hypothesis that plaintiff unintentionally failed to disclose that, after the burglary, he removed some items claimed as lost. In light of the foregoing, the verdict of the jury was not contrary to the law and the evidence.

CONCLUSION
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against the plaintiff.
AFFIRMED.
NOTES
[1] The police report indicates that Ms. Cashio listed the following property as missing at the time the scene was initially investigated:

 Description Value
Living Room Couch orange and Red 2000
2 chairs 500 each 1000
oriental coffe [sic] tables (two) 2000
 ea 4000
Leather (blue) [sic] 2000
oriental decor table 5000
one brass pot [sic]
two FU dogs 1000 each 2000

[2] The parties stipulated that plaintiff owned all items listed, the listed values were accurate, and that the aggregate sum of those values exceeded the total amount of theft-loss insurance in force at the time of the alleged burglary.
[3] The judgment was silent as to the claim of the intervenor.
[4] The listed assignments of error are compiled from the defendant's brief and his supplemental brief and assignments of error. The defendant's supplemental brief was submitted in conjunction with the supplementation of the record to include the transcript of the jury charges.
[5] First Guaranty Bank v. Pelican State Mutual Insurance Company, 590 So.2d 1306 (La.App. 1st Cir.1991), concerned the Standard Fire Insurance Policy set forth in LSA-R.S. 22:691(F)(2) and 692.1. However, the same reasoning applies in the instant situation. The Standard Fire Policy Endorsement was attached to the policy at issue in the instant case, in the following form, as required by statute:

The provisions of the Standard Fire Policy are stated below. State law still requires that they be attached to all policies. If any conditions of this form are construed to be more liberal than any other policy conditions relating to the perils of fire, lightning or removal, the conditions of this form will apply.
. . . . .
This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.
Concealment fraud. This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.
[6] The items scratched off the list were:

 Amount
Description paid
A. Brandt Capt. Trundle 566.10
A. Brandt Capt. 80" top Mattie Set 193.05
A. Brandt 75" Lower Set 193.05
Student Desk Left 341.55
# 3266 Study Top Unit w/doors 422.55
Cloisonne Burner Lamp 864.00

[7] Cf. J. Weinstein, Weinstein's Evidence § 609[07] at 74 (1991) (stating that "[s]ome uncertainty has been expressed as to whether the applicable period should be measured up to the date when the trial commences or the witness testifies, or the date of the charged crime. The time of testimony is most appropriate since the jury must determine credibility at that moment." (footnote omitted)).
[8] LSA-C.E. art. 607 D states:

Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
[9] Evidence of the details of the incident was admitted at trial without objection in a context which did not expressly connect the incident with the misdemeanor unauthorized use of a movable conviction.