588 So.2d 1144 (1991)
Frank PETITTO
v.
Robert McMICHAEL, et al.
No. CA 90 0695.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
Writ Denied January 10, 1992.
*1145 Ernest Drake, Jr., Ponchatoula, for plaintiff-appellant.
Charles M. Hughes, Bogalusa, for defendant-appellee Robert McMichael and La. Farm Bureau.
Alton Lewis, Jr., Hammond, Charles M. Reid, Amite, for appellee, George Phillip McMichael, et al.
*1146 Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This is a suit for damages in tort alleging that weed spraying on the defendants' property caused herbicide damage to the bell pepper crop on the plaintiff's property. Made defendants were (1) George McMichael, Jr., (2) Mary McMichael, (3) Louisiana Farm Bureau Mutual Insurance Company, George and Mary's insurer, (4) Robert McMichael, (5) State Farm Fire and Casualty Insurance Company, Robert's insurer, (6) George McMichael, III, and (7) Kathlyn Lea McMichael. Defendants denied liability. A trial by jury resulted in a verdict for the plaintiff of $50,984.00, plus legal interest and all costs. Pursuant to La.C.C.P. art. 1811, the defendants filed alternative motions for judgment notwithstanding the verdict (JNOV) and a new trial. The trial court rendered a JNOV in favor of the defendants and dismissed the plaintiff's demands. The trial court did not rule on the motions for a new trial. The plaintiff took a devolutive appeal. This court dismissed the appeal and remanded to the trial court for a ruling on the new trial motions in compliance with La.C.C.P. art. 1811(C). Petitto v. McMichael, 552 So.2d. 790 (La.App. 1st Cir.1989). On remand, the trial court granted the new trial motions. Thereafter, plaintiff took this devolutive appeal.

FACTS
George McMichael, Jr. owns a 32.44 acre tract of land; Robert W. McMichael owns a 49.58 acre parcel; Mary McMichael owns a 27.55 acre parcel; and the three own an additional 10 acre tract in indivision, for a total of 119.57 acres. This property is located south of the Town of Amite in Tangipahoa Parish. The McMichaels are siblings and pooled this land to operate a joint cattle venture. The plaintiff herein, Frank Petitto, owns the property which is contiguous to and north of the McMichael property. Petitto and the McMichaels share a common boundary 1,461.24 feet in length. During April of 1981, George McMichael, Jr., with the consent of Robert and Mary McMichael, sprayed a phenoxy herbicide known as 245-T LO-V-ESTER on their property. Shortly after the McMichael property was sprayed with the chemical, Petitto noticed extensive damage to his bell pepper crop. Because of the damage to his 1981 crop, Petitto only sold a small percentage of that year's harvest and suffered financial losses. He alleged his crop failure was caused by drifting fumes from the herbicide and asserted multiple theories of liability, including negligence, absolute liability for ultrahazardous activity, negligence per se and liability under La.C.C. art. 667.

ERRONEOUS REFUSAL TO GIVE JURY CHARGES

(Assignment of Error No. 2)
Plaintiff claims the trial court erred by refusing to charge the jury with his proposed twenty-eight jury charges. The record indicates that the plaintiff objected to the trial court's ruling immediately after the jury retired. The trial record reads as follows:
MR. DRAKE:
Let the record reflect that the jury has retired and pursuant to the Court's reservations of all attorneys [sic] rights to object to the Court's refusal to submit specific instructions, at this particular time, your Honor, I would like to formally place in the record my objection to the Court's ruling denying my request of twenty-eight certain instructions being twenty-six I filed with the Court on March 14, 1985, I believe I said, whatever is in the record and today submitted two further instructions number 27 and 28.
THE COURT:
All right.
Article 1793(C) of the Louisiana Code of Civil Procedure states:
A party may not assign as error the giving or failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. *1147 If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury. (Emphasis added)
The foregoing codal provision is clear and unambiguous. It establishes a mandatory procedural rule for preserving an objection to denial of a requested jury charge for appellate review. The statute requires that the litigant must object to the refusal to give each special charge and state the grounds for each objection. In this instance, counsel made an objection to the trial court's refusal to give the special jury charges requested without assigning any reasons. This does not comply with the statute. Failure to do so forfeits the right to complain on appeal. Dawson v. Mazda Motors of America, Inc., 517 So.2d 283 (La.App. 1st Cir.1987); Lea v. Baumann Surgical Supplies Inc., 321 So.2d 844 (La. App. 1st Cir.1975), writ denied, 325 So.2d 279 (La.1976).
This court in Wilson v. Wilson, 542 So.2d 568, 574 (La.App. 1st Cir.1989), observed as follows:
Our jurisprudence has consistently held that an objection to the trial court's instructions to jurors, without assignment of any reasons whatsoever, does not comply with LSA-C.C.P. art. 1793.... To preserve his right to appeal an erroneous jury instruction, a litigant must enter in the record the specific matter to which the objection is made and the grounds therefor. (Citation omitted) The plaintiff did not properly preserve his right to object to the trial court's ruling. Consequently, the objections were waived.
This assignment of error is without merit.

VALIDITY OF JUDGMENT NOTWITHSTANDING THE VERDICT

(Assignment of Error No. 1)
Plaintiff contends that the trial judge erred in granting a JNOV. He asserts the jury was correct in holding defendants legally responsible for the damage to his bell pepper crop.
In his opinion granting the JNOV, the trial judge held as follows:
There was certainly no preponderance of evidence establishing negligence on the part of the defendant George McMichael.
. . . . .
There were no damages proven by a preponderance of the evidence.
A trial court may grant a JNOV only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach a contrary verdict. If there is substantial evidence opposed to the motion, i.e., evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion must be denied. In considering a motion for JNOV, the trial court must construe all evidence and reasonable inferences to be made therefrom in favor of the party opposing the motion. Further, the trial court may not weigh the evidence, pass on the credibility of witnesses or substitute its own judgment for that of the jury. A JNOV can be granted by a trial court only when a jury's verdict is one which reasonable men could not have rendered. The standard to be applied by appellate courts in reviewing a grant of JNOV is whether the trial court's findings in rendering the JNOV were manifestly erroneous. Hutchinson v. Wal-Mart, Inc., 573 So.2d 1148 (La.App. 1st Cir.1990).
The weight of the evidence tends to show that George McMichael, Jr. sprayed the chemical on his property on April 15, 1981, when the wind would not have blown it onto plaintiff's property. However, Frances Petitto, the plaintiff's wife, testified that she saw McMichael spraying on April 11th. John Cordero, an expert in forensic meteorology, testified that on April 11th, the wind was out of the south. Testimony by experts on both sides indicated that if the wind was out of the south, fumes from the spray could have been blown north onto Petitto's crops.
*1148 The trial judge, in granting the JNOV, erroneously weighed the evidence presented and concluded that the spraying took place on April 15th, when the wind probably would not have blown the chemical onto plaintiff's farm. The opinion provides:
There was some evidence that he sprayed his fence rows on the 11th, while the wind had a southerly orientation. This evidence consisted of the testimony of Mrs. Petitto who testified that she was going to church with a friend and saw Mr. McMichael spraying. She states that she knows it was the 11th because she was attending church on a religious holiday. This crucial bit of evidence was not substantiated by testimony from Mrs. Petitto's friend.

(Emphasis in original)
In passing on a motion for a JNOV, the court is required to accept the evidence in favor of the party against whom the motion is made. The party against whom a motion for JNOV is made must be given the benefit of every reasonable inference that can be drawn from the evidence by the jury.
The jury's conclusion that McMichael sprayed the herbicide on a day on which the wind would have blown the fumes from it onto plaintiff's crops is reasonable, given the testimony introduced at trial. Although there was much testimony to negate this conclusion, the evidence presented could have led reasonable men to conclude that George McMichael, Jr. was at fault in his application of the chemical.
In his opinion, the trial judge observed as follows:
The Court does not feel that there was sufficient proof of the claimed damages. There was a parade of experts that attempted to assess the damage, but all of this testimony was based on five (5) photographs. These photographs were taken extremely "close up" to the plants. Some could have been of the same plants. It is odd, to say the least, that plaintiff is claiming that approximately twenty (20) to thirty (30) acres of his peppers are devastated, but he produces only five (5) photos of individual plants to establish the damage.
In concluding that the plaintiff did not show damages, the trial judge gave no weight to the testimony of Frank Petitto, Frances Petitto, Anthony Petitto, Anthony Girgenti and Harrel Griffin. These witnesses, after surveying the damage, testified that plaintiff's bell pepper crop was almost totally destroyed. The trial judge improperly weighed the evidence presented in finding that the plaintiff had not proven damages for purposes of the JNOV.
After a thorough review of the record, we find that the trial court was manifestly erroneous in granting the defendants' motions for JNOV. The evidence does not point so strongly and overwhelmingly in favor of the defendants that reasonable men could not reach different conclusions as to fault and extent of damages.
This assignment of error has merit.

VALIDITY OF JUDGMENT GRANTING NEW TRIAL

(Assignment of Error No. 4)
Petitto claims that trial court erred in granting defendants' motions for a new trial.
Article 1811(C)(2) of the Louisiana Code of Civil Procedure states: "If the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise." (Emphasis added).
Article 1972 of the Louisiana Code of Civil Procedure provides:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.

*1149 (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
Article 1973 of the Louisiana Code of Civil Procedure provides:
A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.
The trial judge's opinion granting the new trial provides, in part, that: "... the jury's verdict is clearly contrary to the law and evidence and therefore there is good grounds for conditionally granting defendants' Motion for New Trial." After reviewing the language of the opinion, it appears the new trial herein is based on the peremptory ground listed in Article 1972(1), rather than on Article 1973.
The trial court found the evidence showed that April 15, 1981, was the date George McMichael applied the herbicide to the fence rows on the McMichael property. Mary McMichael testified that she could ascertain the actual date from entries in her diary. Anthony Girgenti, the field inspector for the Louisiana Department of Agriculture, testified that he determined that the date of the spraying was between the 13th and 15th of April. John Cordero, plaintiff's meteorology expert, confirmed McMichael's testimony that on April 15 the winds were out of the north, away from plaintiff's property.
George McMichael testified he avoided spraying along the common boundary between the McMichael and Petitto properties. He used a hand-held sprayer that was set to spray in a stream rather than in a mist so the chemical would not float. Plaintiff's brother, John Petitto, testified that the bell peppers on his property were not damaged, and they were not protected by the 400 foot hedgerow that separates plaintiff's land from the McMichael land. His small tract borders the McMichael property on the south and plaintiff's property to the west and north. Dr. Lowell Black, an expert in plant pathology, testified that a chemical drift would not skip John Petitto's peppers and destroy plaintiff's peppers in his northernmost fields, located half of a mile away from the area sprayed. The trial judge stated: "The only reasonable inference which can be drawn is that if plaintiff's crop suffered chemical damage, the drift must have come from the north and not the McMichael property." Although there was testimony that photos taken in Frank Petitto's northern fields showed phenoxy herbicide damage, none of the experts could tell whether this damage was a result of 245-T LO-V-ESTER, nor could they be sure from what direction the herbicide had drifted. Dr. Black testified that the photos taken in the south fields showed no signs of chemical damage. Furthermore, Charlie Relan, a broker of bell peppers, testified that stem rot caused plaintiff's damage.
In a motion for a new trial, the trial judge is free to evaluate the evidence without favoring either party; he may draw his own inferences and conclusions, and may evaluate the credibility of the witnesses to determine if the jury has erred in giving too much credence to an unreliable witness. Pellerin v. Tudor Construction Company, 414 So.2d 403, 406 (La.App. 1st Cir.), writ denied, 420 So.2d 455 (La.1982). See also Guidry v. Winn-Dixie of Louisiana, Inc., 546 So.2d 1326 (La.App. 3rd Cir.1989). In this posture, a trial court may deny a motion for JNOV (where all evidence must be viewed in the light most favorable to the opposing parties), and grant a motion for a new trial because the verdict is contrary to the evidence (where the trial judge can make his own inferences and make his own credibility determinations). Pellerin, 414 So.2d at 406-407.
A trial judge has much discretion in determining whether or not to grant a new trial. Official Revision Comment (d) for La.C.C.P. art. 1971; Miller v. Chicago Insurance Company, 320 So.2d 134 (La. 1975). After reviewing the record, we conclude that the trial judge did not abuse his discretion by granting a new trial. Because we conclude the trial court did not err in granting a new trial, it is unnecessary to address plaintiff's remaining assignment of error alleging that the damages awarded by the jury were inadequate to compensate plaintiff for his losses.
*1150 This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court granting the judgment notwithstanding the verdict is reversed, the judgment granting a new trial is affirmed, and the case is remanded for a new trial. The costs of this appeal are assessed to plaintiff-appellant.
REVERSED IN PART; AFFIRMED IN PART; AND REMANDED FOR A NEW TRIAL.
SHORTESS, J., agrees with this opinion with additional reasons.
SHORTESS, Judge, concurring.
The trial court, at some length, articulated in writing why it felt a conditional new trial was appropriate if we reversed the granting of the JNOV. This situation is much different from that presented in cases such as Daigle v. Coastal Marine, 488 So.2d 679 (La.1986), and Gonzales v. Xerox, 320 So.2d 163 (La.1975), where the supreme court reversed appellate decisions which were remanded for new trials. In those cases, the provisions of La.C.C.P. art. 1811(C)(2) were not available.
I respectfully concur.