645 So.2d 1256 (1994)
William P. BARLOW, et ux.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
No. 93 CA 2385.
Court of Appeal of Louisiana, First Circuit.
November 10, 1994.
Writ Denied February 3, 1995.
*1257 William Paul Simpson, Amite, for plaintiff-appellee.
Robert D. Hoover, Anthony M. Butler, Baton Rouge, for defendant-1st appellants.
Peter Michell, Hammond, for defendant-2nd appellant.
Before CRAIN, FOIL and WHIPPLE, JJ.
CRAIN, Judge.
This is a suit for damages resulting from an automobile accident which occurred in Tangipahoa Parish on August 26, 1990 between defendant, Claire E. Palmer, who was turning left, and plaintiff, William P. Barlow, who was passing. The vehicle driven by Claire Palmer was owned by Lucille Palmer and insured by State Farm Mutual Automobile Insurance Company (State Farm). Claire Palmer was insured by The Hartford Insurance Company of ITT (Hartford).
A jury trial resulted in a verdict finding Claire Palmer 10% negligent in causing the accident and William Barlow 90% negligent. William Barlow was awarded general damages totalling $31,000 and specials of $30,000. Thelma Barlow was given no damages for loss of consortium.
A motion was filed for judgment notwithstanding verdict and alternatively for a new trial. The trial judge granted the JNOV, set aside the jury verdict on negligence, and assessed Claire Palmer with 100% fault. The damages granted by the jury to William Barlow were left intact, as was the denial of damages to Thelma Barlow. The trial judge granted a new trial in the event this court reversed the JNOV.
Defendants appeal the JNOV. Thelma Barlow did not appeal nor answer defendants' appeal. The denial of damages to her is therefore final.
Defendants specify as a single assignment of error the granting of the JNOV.

THE JNOV
The JNOV is provided for in La.C.C.P. art. 1811. The criteria for granting a JNOV were set forth by the Supreme Court in Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991). The court stated that,
"A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Scott [v. Hospital Service District No. 1], supra [496 So.2d 270 (La.1986)]. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
Anderson, 583 So.2d at 832.
On review, the appellate court must first determine if the trial court was in error in granting the JNOV. In making this decision, the appellate court uses the same criteria as did the trial judge in granting the motion. Anderson, 583 So.2d at 832.
Factually, the plaintiff presented the testimony of Trooper William Dees. He investigated the accident which occurred on *1258 Louisiana Highway 22, (La. 22) around Peoples store. He determined the accident was between vehicles driven by William P. Barlow (Barlow) and Claire E. Palmer (Palmer). He found damage to the Palmer vehicle at the left front corner and the left front fender by the wheel. Barlow's vehicle was on the south side of La. 22 facing west (La. 22 runs east and west at the point of the accident). The Palmer vehicle was in the parking lot of the store. He does not know if they had been moved. The speed limit at this section of highway was fifty miles per hour. The accident occurred on La. 22 some 200 feet from the Brown Road intersection.
Pete Pymm lives about a mile east of the accident site. He is a friend of Barlow. On the day of the accident he and Barlow had loaded a welder onto Barlow's truck at Pymm's house. Pymm was going to follow Barlow to Barlow's house. Pymm's brother, Paul, was in the car with Pymm. He pulled from the driveway into La. 22 directly behind Barlow going west towards Ponchatoula. They were getting up to the speed limit when they came up behind a car going slower, so they slowed to the speed of the preceding car. They stayed at that speed for "a little ways" because of oncoming traffic. When the traffic cleared, Barlow put on his signal and eased out to pass. When he was beside the car he was passing, it turned left into him. When Barlow pulled out to pass, Pymm could see the rear of the car being passed and he did not see a blinker. He thinks they followed Palmer for about two minutes. He and Barlow were in another accident around September of 1989.
William Barlow testified that he had gone to a friend's house to pick up a welder before noon on the 26th of August, 1990. After loading the welder in his truck he entered La. 22 and proceeded west towards Ponchatoula. He came upon Ms. Palmer and followed her for a little while because of oncoming traffic. He does not know how long. The traffic cleared so he proceeded to pass. When he got beside her, he noticed she was coming over. He blew his horn and she looked but kept coming over. He ran off the road but she hit him anyway. The front end and side of his truck were damaged. After the collision with Palmer, he hit a Peoples sign in the ditch with the front of his truck. The left fender of the Palmer car was damaged. At the time he pulled into the left lane to pass, she had not given a turn signal. He thinks he was going about fifty miles per hour when he passed. He also believes that Pymm's house that he left is only eight-tenths of a mile from Peoples store. Ms. Palmer was going about forty or forty-five miles per hour when he passed her. It appeared to him Ms. Palmer was making an angled turn into the large Peoples parking lot.
Defendants called Ms. Claire Palmer. She testified that August 26 was a Sunday, and she had been to church. She left church to go to Peoples to get a paper. She drove away from church on a road which intersects La. 22 from the south. She stopped at the intersection to allow traffic to clear on La. 22 from the west towards Ponchatoula. She observed the Barlow vehicle when she turned left onto La. 22. She put her blinkers on to turn left at Peoples as soon as she entered La. 22 because it's only a short distance. She never exceeded twenty miles per hour and when she turned left into Peoples she made a sharp as opposed to an angling turn. She does not recall looking into her rear view mirror prior to turning.
It was stipulated that if James Peoples were called, he would testify that the distance from the intersection where Ms. Palmer entered La. 22, to Peoples store is 200 feet.
Without making any credibility determinations and resolving all reasonable inferences and factual questions in favor of Ms. Palmer, the jury could have concluded that Ms. Palmer entered La. 22 and turned left or west towards Ponchatoula. She was going to travel some 200 feet to Peoples store where she was going to turn left again into the store's parking lot. She saw the Barlow vehicle approaching from the east as she turned west onto La. 22. She immediately turned on her left turn signal on entering La. 22. She never exceeded twenty miles per hour on La. 22 before turning into Peoples. After entering La. 22 she did not look into her rear view mirror to see if she could *1259 safely turn left, or if she looked she did not see Barlow who was obviously there to be seen.
From these facts there are inferences that can be drawn in Ms. Palmer's favor. Barlow was behind her when she turned into La. 22. Since she immediately turned on her left turn signal, he should have seen that she was turning left before he started to pass. Ms. Palmer did not check her rear view mirror before turning, but had she done so when she engaged her signal, she would only have seen Barlow behind her. Nothing would cause her to anticipate that he would attempt to pass after she signaled her left turn. However, she unquestionably should have ascertained Barlow's position when she actually made her turn and the physical damage indicates she probably turned into Barlow.
Interpreting the facts and inferences in favor of Ms. Palmer, as required in considering a JNOV, a jury verdict assessing negligence to both parties is sustainable. The question is whether it is sustainable in assessing the passing driver with ninety percent negligence and the left turning driver with ten percent under the facts and inferences that can be drawn in this case.
Without question the left turning motorist has a strong duty of care which requires not only looking before turning, but also seeing what is observable. Courmier v. Travelers Ins. Co., 486 So.2d 243, 247 (La. App.3rd Cir.) writs denied, 489 So.2d 250, 251 (La.1986). However, in considering the assessment of percentages of fault, one of the pertinent factors is the greatness of the risk created by the conduct. Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 974 (La.1985). After resolving the facts and inferences of this case in favor of Ms. Palmer it is apparent that the conduct creating the greater risk is that of Mr. Barlow. He overtook the Palmer vehicle which was moving very slowly with a left turn signal engaged. She was in that position for at least 200 feet. Consequently, his action in proceeding to pass in spite of the left turn warning created a greater risk than Ms. Palmer's failure to look. Under the findings of fact and inferences the jury was entitled to make, a conclusion that fault should be assessed ninety percent to Mr. Barlow and ten percent to Ms. Palmer resulted in no legal error. Accordingly, the JNOV is set aside and the jury verdict is reinstated.
The trial court conditionally granted a new trial. La.C.C.P. art. 1811(c)(2). Although no separate reasons were given for granting the new trial and the JNOV, the reasons given by the trial judge indicate that he did not think the jury verdict was reasonable, and that the verdict was unreasonable given the testimony of the parties and the physical evidence. He speculated that the jury sympathized with the defendant "a very sweet lady who reminded everyone of their grandmother." Consequently, the new trial must be based on La.C.C.P. art. 1972(1) providing for such "[w]hen the verdict or judgment appears clearly contrary to the law and the evidence."
"In this posture, a trial court may deny a motion for JNOV (where all evidence must be viewed in the light most favorable to the opposing parties), and grant a motion for a new trial because the verdict is contrary to the evidence (where the trial judge can make his own inferences and make his own credibility determination)."
Petitto v. McMichael, 588 So.2d 1144 (La. App. 1st Cir.1991) writ denied, 590 So.2d 1201 (La.1992). In making credibility determinations the trial judge may determine the jury erred in giving too much credence to an unreliable witness. Petitto, 588 So.2d at 1149. Where the trial court makes credibility determinations and decides to grant a new trial because the jury verdict is contrary to the evidence, the appellate court must determine whether this decision of the trial court is an abuse of discretion. Pellerin v. Tudor Const. Co., 414 So.2d 403, 406 (La.App.1st Cir.) writ denied, 420 So.2d 455 (La.1982), cert. denied, 479 U.S. 824, 107 S.Ct. 96, 93 L.Ed.2d 47 (1986).
It is apparent from the trial judge's statements that he determined the jury relied on the testimony of Ms. Palmer in reaching their verdict and he considered that testimony unreliable. It is that testimony which is the sole evidence of the left turn signal being engaged some 200 feet prior to the left *1260 turn. If that testimony is unreliable, then the basis for assessing the greater fault on Barlow is removed. It is not our province to go behind the credibility determinations of the trial court. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). On the other hand, it is the province of the trial judge to make independent credibility determinations in considering whether to grant a new trial. Petitto, 588 So.2d at 1149. Where the trial court has made these determinations and the testimony of the witness considered unreliable by the judge is crucial to the verdict of the jury, we cannot say that granting a new trial is an abuse of discretion.
Consequently, we reverse the granting of a JNOV and affirm the granting of a new trial. Costs are assessed equally between the parties.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED FOR A NEW TRIAL.