673 So.2d 320 (1996)
Robert BUSBY
v.
ST. PAUL INSURANCE COMPANY, Mayer, Knox & Amiss Agency and Carroll S. Mayer, Jr., et al.
No. 95 CA 2128.
Court of Appeal of Louisiana, First Circuit.
May 10, 1996.
*323 Arthur R. Thomas, Baton Rouge, for Appellant, Robert Busby.
Myron A. Walker, Jr., Baton Rouge, for Appellee, St. Paul Fire Insurance Company and Carroll Mayer, Jr.
Jay C. Zainey, Metairie, for Appellee, Louisiana Health Care Authority on Behalf of New Orleans.
Before LOTTINGER, C.J., and GONZALES and FITZSIMMONS, JJ.
GONZALES, Judge.
This is an appeal from a reformed judgment rendered in a parking lot accident involving a pedestrian and a vehicle. Plaintiff, Robert Busby ("Busby"), appeals the reformed judgment raising numerous assignments of error.

FACTUAL AND PROCEDURAL BACKGROUND
On December 21, 1987, Mr. Busby was walking in a northerly direction in the parking lot of the K & B Drug Store ("K & B") located at the corner of North Acadian Thruway and Government Street. At the same time, defendant, Carroll S. Mayer, Jr., ("Mayer") was backing out of a parking spot in the K & B parking lot when he hit Mr. Busby. At the time of the accident, Mr. Mayer was employed by Mayer, Knox and Amiss Agency ("the agency"), but was on his lunch break. The vehicle that he was operating, a 1983 Chevrolet van, was owned by his employer and insured by St. Paul Insurance Company ("St. Paul"). Mr. Busby complained of pain in his neck, back, left knee, and left shoulder as a result of the accident. Mr. Busby subsequently underwent surgery on his knee and neck which he claims was necessitated by the accident.
Mr. Busby filed suit against Mr. Mayer, the agency and St. Paul. A jury trial was held on January 5 and 6, 1995. After Mr. Busby presented his case-in-chief, the defendants filed a Motion for Directed Verdict. The trial court granted the motion, but only as to the agency. Thus, the remaining defendants put on their defense. The jury returned a verdict in favor of Mr. Busby in the amount of $15,000.00 plus interest and costs, but also assessed Mr. Busby with 50% of the fault. Accordingly, the trial court rendered a jury verdict judgment in favor of Mr. Busby in the amount of $7,500.00 plus interest and costs. After the jury verdict judgment was signed, Mr. Busby filed a Motion for New Trial and Alternatively an Additur. The Motion for New Trial was denied, but the trial court, with the defendants' consent, awarded a net $7,500.00[1] additur because the jury had awarded special damages without awarding general damages. Thus, a reformed judgment was signed on May 4, 1995, denying the Motion for New Trial, granting an additur, and awarding Mr. Busby a total of $15,000.00 in damages plus interest and costs.
It is from this reformed judgment that Mr. Busby appeals, asserting the following assignments of error:
1. The trial court erred by admitting into evidence prior criminal acts of a nature ten (10) years past and the list of institutions in which plaintiff was incarcerated together with inadmissible medical records and other documents without regard to the right of plaintiff to cross-examine and question its validity, authenticity and/or the person(s) who prepared same. [sic]
2. The trial court erred in its additional instructions to the jury during deliberations relative to the burden of proof by *324 plaintiff by stating that the plaintiff has the burden of tipping the scale of justice, in light of the issue of comparative fault or contributory negligence.
3. Contrary to the law and evidence, the jury erred in its finding that plaintiff was fifty percent (50%) comparatively responsible for the accident.
4. The jury erred in failing to find that the testimony and evidence established that the accident of December 21, 1987, if not the sole cause of plaintiff's injuries, did aggravate the preexisting conditions of plaintiff-appellants [sic] knee and neck which resulted in surgeries.
5. Whether the jury's failure to award plaintiff-appellant anything for pain and suffering constitutes legal error and is reversible and whether the jury's inappropriate or inadequate award for medical expenses, lost [sic] of wages and future earnings should be increased.
6. The trial court erred in granting defendant-appellee [sic] motion for directed verdict as to defendant-appellee, Mayer, Knox & Amiss Agency.
7. The trial court erred in denying plaintiff-appellant, Robert Busby's motion for a new trial.

ASSIGNMENT OF ERROR NO. 1
Through this assignment of error, Mr. Busby complains that the trial court erred in its introduction into evidence criminal records of his prior convictions that were more than ten years old. Additionally, Mr. Busby asserts that the trial court permitted the use of hearsay evidence involving prison medical records without the proper foundation and over his objection on authenticity grounds.
Initially, we note that on direct examination by his own counsel, Mr. Busby testified that he had been convicted in 1975[2] as the result of his involvement in the unauthorized sale of pills while working as a delivery man for a drug store. He received a thirteen year sentence from the federal government and a five year sentence from the State of Louisiana. Consequently, he served his time in prison and was eventually released to a half-way house. Mr. Busby also testified that in 1979, surgery was performed on his neck to remove a cyst while he was incarcerated in a Missouri prison. A subsequent exploratory surgery was performed in 1980. According to Mr. Busby, he had no problems with his neck after the 1979 and 1980 surgeries. Additionally, Mr. Busby testified that he had no problems with his left knee between the 1979 and 1980 neck surgeries and the time of the subject accident, although the medical testimony reveals that surgery was performed on Mr. Busby's left knee in 1984.
On cross-examination, Mr. Busby was questioned about a lawsuit filed on his behalf against the federal government seeking five billion dollars in damages resulting from the neck surgeries performed while he was in prison. This suit was filed in 1982 and contained allegations that Mr. Busby suffered total paralysis of his body after the 1979 surgery. He attempted to explain the allegation by stating that an inmate prepared the suit for him to sign. Mr. Busby then denied the paralysis allegation contained in the suit. Copies of the suit and amending petitions were admitted into evidence without any objection from Mr. Busby.
To further demonstrate inconsistencies between his in-court testimony and prior statements, Mr. Busby was questioned about the places of his incarceration. There was no objection made to this line of questioning. Subsequently, Mr. Busby was shown copies of various medical records from the different places of his incarceration. He was questioned about the fact that these medical records reflected complaints made by him after 1980 about his neck, legs, and back, and after 1984, about his left knee. Mr. Busby objected to the use of these documents on the grounds that they had not been authenticated and were not listed on defendants' exhibit list. Importantly, the trial court sustained all but one of Mr. Busby's objections to the admissibility of these medical records. The one exception was certified medical records of plaintiff from the Department of Public *325 Safety and Corrections, pertaining to Mr. Busby's incarceration at the Louisiana State Penitentiary at Angola ("Angola"). The trial court concluded that these documents were authentic and offered as impeachment evidence; and therefore, admissible.

EVIDENCE OF PRIOR CONVICTIONS
Louisiana Code of Evidence article 609[3] allows the credibility of a witness in a civil case to be attacked with evidence of convictions. However, evidence of a conviction is not admissible if a period of more than ten years has elapsed since the date of the conviction. Additionally, the crime must be one punishable by death or imprisonment in excess of six months, with the probative value of admitting the evidence outweighing its prejudicial effect, or the conviction must be for a crime that involved dishonesty or false statement. La.C.E. art. 609.
Article 609 of the evidence code is not applicable in the present case because of the purpose for which evidence of Mr. Busby's places of incarceration was offered. He was not being asked about his prior convictions. Instead, he was being questioned about prior statements he had made about his pre-accident medical condition that were documented in prison medical records. Thus, the evidence of Mr. Busby's prior places of incarceration was not offered to attack his general reputation for truthfulness as an convicted felon. See La.C.E. art. 608.[4] Rather, the evidence was offered to attack specific allegations made by Mr. Busby at trial about both the causation of his injuries and the lack of problems with his neck, back, knee and legs between 1979 and the accident. This evidence would have been properly admissible as impeachment evidence. Moreover, Mr. Busby "opened the door" to this line of questioning when he testified about his convictions and incarcerations during direct examination. Thus, the cross-examination testimony on this issue was admissible. State v. Mitchell, 94-521 (La.App. 3d Cir. 11/2/94); 649 So.2d 569, 572.
Finally, this was an attack of credibility based on intrinsic evidence, not extrinsic evidence. The scope of cross-examination is broad. La.C.E. art. 611.[5] A witness may be impeached on cross-examination through the use of intrinsic evidence with few limitations, none of which are applicable to the present case. La.C.E. art. 607(C);[6]State ex rel *326 Nicholas v. State, 520 So.2d 377, 380 (La. 1988). Additionally, to complain about impeachment by intrinsic evidence, an objection must be made to the question at the time of trial, else the right to complain about the question on appeal is waived. Circello v. Government Employees Insurance Company, 425 So.2d 239, 242 (La.App. 1st Cir.1982), writ denied, 429 So.2d 145 (La.1983) (emphasis added). There was no objection made to the questions asked by the defendants' counsel regarding Mr. Busby's places and times of incarceration. Accordingly, Mr. Busby waived his right to appeal the propriety of this line of questioning.
This part of Mr. Busby's assignment of error is without merit.

ADMISSIBILITY OF MR. BUSBY'S PRISON MEDICAL RECORDS
The only medical records (that Mr. Busby complains about on appeal) admitted by the trial judge were documents from the Department of Public Safety and Corrections pertaining to Mr. Busby's incarceration at Angola. Thus, the issue raised through this assignment of error is whether these Department of Public Safety and Corrections' records were properly admissible. At trial, counsel for Mr. Busby argued that these records were inadmissible because they were not authentic and were not listed on defendants' exhibit list contained in the pretrial order.
The authenticity objection followed Mr. Busby's denial that the Angola records pertained to him, despite an affidavit stating that the records were of Robert Busby; and his denial of making the statements contained in the Angola records. The authenticity of these documents is controlled by La. C.E. arts. 901 and 902(2)(b).
Under Louisiana Code of Evidence article 902(2)(b),[7] these documents constituted a certified Louisiana public[8] document. The certification in this case shows that it is a record of the Department of Public Safety and Corrections and it is certified in Baton Rouge. The certification has reference to records from Angola in the early 1980's. In this certification, the signor identified her official position, as required by La.C.E. art. 902(2)(b) and there is no contemporaneous objection or argument made by Mr. Busby to indicate that this is not the proper person to certify the records under La.C.E. art. 902.
There was also an issue as to whether the Angola records contained the statement of plaintiff. Louisiana Code of Evidence article 901 sets forth the standard for determining this issue, providing: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." In the present case, defendants claimed that the Angola records contained prior statements made by plaintiff to Angola medical personnel. Thus, to be admissible, the trial court had to be satisfied that the statements contained in the Angola records were the statements of plaintiff.
We find the trial court had sufficient information available to it to determine that the statements were plaintiff's prior statements. The statements contained in the Angola records were made at Angola and were made at a time in which plaintiff admittedly was incarcerated in Angola. The records contained plaintiff's name and contained evidence of *327 similar medical problems that plaintiff had admittedly suffered from on other occasions. This was sufficient information to support a finding by the trial court that the statements contained in the Angola records were the prior statements of the plaintiff, Mr. Busby. Nevertheless, out of an abundance of caution, the court admonished the jury that it was not determining for the jury whether this was, in fact, a statement of the plaintiff, Mr. Busby. Instead, the trial court stated that it was going to let the document into evidence for the jury to consider and assess the weight that these documents would be given. Consequently, we conclude that the Angola records were properly authenticated.
Having found that these documents were authentic, we address the issue of whether they had to be listed on defendants' pretrial exhibit list.
Louisiana Code of Evidence article 607(D)[9] allows a witness' credibility to be attacked with extrinsic evidence, including prior inconsistent statements. Pursuant to Louisiana Code of Evidence article 607(D), this extrinsic evidence is admissible unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice. Williams v. United Fire and Casualty Company, 594 So.2d 455, 462 (La.App. 1st Cir.1991). Louisiana Code of Evidence article 613 provides "[e]xcept as the interests of justice otherwise require, extrinsic evidence of bias, interest, or corruption, prior inconsistent statements, conviction of crime, or defects of capacity is admissible after the proponent has first fairly directed the witness' attention to the statement, act, or matter alleged, and the witness has been given the opportunity to admit the fact and has failed distinctly to do so."
Thus, before extrinsic evidence of a prior inconsistent statement is admissible, the proper foundation must be laid. Williams, 594 So.2d at 462. This foundation requires that the time, place and circumstances of the making of the prior statement be called to the witness' attention and the witness be given opportunity to admit or deny having made the prior statement. State v. Nedd, 93-1906 (La.App. 1st Cir. 11/10/94); 647 So.2d 346, 350. The witness' denial of making the prior statement completes the foundation. Nedd, 647 So.2d at 350. The statement is admissible as impeachment evidence and is excludable by a determination of unfair prejudice under a La.C.E. art. 403 balancing test. See La.C.E. art. 613. As previously indicated, Mr. Busby was being questioned on cross-examination about statements contained in his prison medical records that addressed complaints made by him between 1979 and the time of the accident. This constituted an attempt by the defense to impeach Mr. Busby's credibility with extrinsic evidence of prior inconsistent statements.
We find that the medical records pertaining to Mr. Busby's incarceration at Angola were admissible as impeachment evidence. The defense laid the proper foundation before seeking admission of this extrinsic evidence. Mr. Busby was shown the medical records, advised of the prison facility from which the records originated, the date(s) which the records purported to cover, and was given the opportunity to admit or deny the statements contained in each of the records. He denied that he suffered the symptoms noted in the medical records.[10] Accordingly, *328 all of these records would have been properly admissible as impeachment evidence. Louisiana Rules of Court for the Nineteenth Judicial District, rule VII(3)(G) provides "[e]xhibits to be used for impeachment... need not be included on the [exhibit] list." Thus, the fact the Angola records were not listed on the pretrial order does not preclude their admission into evidence as impeachment evidence. Moreover, had these records been included in the pretrial order, they would have been admissible for their substantive value as an admission of a party opponent. La.C.E. art. 801(D)(2); Stapleton v. Great Lakes Chemical Corporation, 616 So.2d 1311, 1325 (La.App. 2d Cir.), modified on other grounds, 627 So.2d 1358 (La.1993).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
Mr. Busby claims that the trial court erred in its additional instructions to the jury during deliberations relative to his burden of proof. Particularly, Mr. Busby complains that the additional jury instruction did not address the burden of proof on liability as it relates to comparative fault. Thus, he contends the additional instruction may have led the jury to believe that he had the burden of proof as to his own comparative fault.
Louisiana Code of Civil Procedure, article 1793(C) provides in pertinent part:
C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
During deliberations, the jury foreperson inquired as to what they should do "if [they] have decided that this is a tie ball game...?" The trial court responded with the following additional instruction:
To establish by a preponderance of the evidence means to prove that something is more likely not than so. In other words, a preponderance of the evidence case means such evidence, as when considered and compared with that opposed to it has more convincing force and produces in your minds belief that what is sought to be proved is more likely true than not true. The plaintiff has the burden of proof.... I talked about those scales being equal ... and if they tilt one way or the other, then the one that tilts it wins. The one who has to tilt it, who tries to tilt it is the one with the burden of proof. If he can't move it or she can't move it, it hasn't tilted.
After giving the additional instruction, the trial court invited Mr. Busby to complain about the instruction. In response, his counsel expressed that he had "some discomfort with [the additional instruction]...." He continued stating, "if [the jury is] left with a question of fact and trying to determine the fact, that they ought to be permitted to make that decision aside from that." Subsequently, Mr. Busby entered an objection to the additional instruction that was given to the jury; however, he did not articulate any specific grounds for his objection on the record.
Our jurisprudence is clear that in order to preserve the right to appeal a trial court's refusal to give a requested instruction or its giving of an erroneous instruction, a party must not only make a timely objection, but must state the grounds of his objection. Martin v. Francis, 600 So.2d 1382, 1387 (La. App. 1st Cir.), writ denied, 606 So.2d 541 (La.1992); Petitto v. McMichael, 588 So.2d 1144, 1147 (La.App. 1st Cir.1991), writ denied, 590 So.2d 1201 (La.1992). Merely making an objection, without assigning any reasons therefor, is insufficient. Martin, 600 So.2d at 1387.
The record shows that Mr. Busby did not state that the additional jury instruction may lead the jury to believe that he had the burden of proof as to his own comparative fault. Mr. Busby merely lodged a general objection to the additional instruction at the trial court's invitation. Because Mr. Busby failed to state the basis of his objection as required by La.C.C.P. art. 1793, he forfeited his right to complain on appeal about the additional instruction given by the trial court. Martin, 600 So.2d at 1387; Petitto, 588 So.2d at 1147.
This assignment of error is without merit.

*329 ASSIGNMENT OF ERROR NO. 3
Through this assignment of error, Mr. Busby complains about the jury's assessment of 50% comparative fault upon him.
In Clement v. Frey, 95-1119, 95-1163 (La. 1/16/96); 666 So.2d 607, the Louisiana Supreme Court recently confirmed that the review of an allocation of comparative fault is governed by the standard set forth in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). In reaching this confirmation, the court concluded that the assessment of percentages of fault is also a factual determination. Clement, 666 So.2d at 610. Thus, the following is a summarization of the applicable principles governing our review of the jury's assessment of percentages of fault: The fact finder has a duty to assess the demeanor and credibility of all witnesses, lay and expert. A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Only after making the finding that the record supports that the lower court was clearly wrong in its apportionment of fault can the appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion. Clement, 666 So.2d at 611.
In the present case, we cannot find that the trial court's assessment of 50% fault to Mr. Busby was clearly wrong. The record establishes that he was walking in a northerly direction in a parking lot behind the rows of parked cars; there was a sidewalk between K & B and the rows of parked cars that ran in the same direction in which Mr. Busby was traveling at the time of the accident; his jacket hood was tied around his face; and he did not see the defendant backing up prior to the accident. Additionally, Mr. Mayer testified that he had looked in his rear view and side view mirrors before commencing to back out of the parking spot, but did not see Mr. Busby; he had travelled less than three feet when the alleged accident occurred; he was going less than one mile per hour at the time of impact; and his foot had never switched from the brake to the accelerator. Thus, the jury could have found that Mr. Busby was partially at fault for not paying more attention to vehicles in the parking lot, especially where there was a sidewalk nearby that he could have used; his jacket hood was tied too tightly around his face so as to block his safe view of the traffic in the parking lot; and/or that he should have been looking for and seen the reverse lights on Mr. Mayer's vehicle as he walked through the parking lot. Any of these permissible factual findings preclude a conclusion by this Court that the jury was clearly wrong in its assessment of the percentages of fault.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
Mr. Busby next asserts that the jury erroneously failed to find that the subject accident was the sole cause of his injuries; or alternatively, aggravated the preexisting conditions of his knee and neck. Our review of the record demonstrates that the jury found a causal relationship between the accident and Mr. Busby's physical injuries.[11] Additionally, the medical evidence supported the jury's obvious finding that the accident was not the sole cause of Mr. Busby's injuries.
Accordingly, this assignment of error lacks merit.

*330 ASSIGNMENT OF ERROR NO. 5
Mr. Busby also assigns as error the jury's failure to award pain and suffering damages. Furthermore, he complains that the damages awarded for lost wages, lost earning capacity, and medical expenses are inadequate.

GENERAL DAMAGES
Mr. Busby argues that the jury erred when it failed to award general damages. Procedurally, we note that this argument addresses the jury verdict judgment wherein Mr. Busby was not awarded general damages. He appealed the reformed judgment in which he was awarded a net general damages additur of $7,500.00, with the defendants' and Mr. Busby's[12] consent. Consequently, he has assigned as error an issue which has already been resolved in his favor at the trial court level through the additur. All arguments in support of this assignment of error, as well as those he successfully made at trial are not available and are totally irrelevant to his appeal from the reformed judgment signed on May 4, 1995.
Accordingly, this part of Mr. Busby's assignment of error is meritless.

SPECIAL DAMAGES
A reviewing court should not set aside an award of special damages unless an analysis of the facts and circumstances reveals an abuse of discretion in setting the award. Stevens v. Winn-Dixie of Louisiana, 95-0435 (La.App. 1st Cir. 11/9/95); 664 So.2d 1207, 1214.
Mr. Busby argues that the jury inadequately compensated him for his special damages. However, based on the record, the jury could have found that the subject accident only minimally aggravated his preexisting conditions to his knee and neck. Dr. Johnny V. Jenkins (the orthopedist who performed arthroscopic surgery on Mr. Busby's left knee in September 1988), Dr. J. Thomas Kilroy (an orthopedic surgeon who gave a second opinion regarding Mr. Busby's neck and back problems), and Dr. John R. Clifford (the neurosurgeon who saw Mr. Busby and suggested he consider undergoing surgery at Charity Hospital in New Orleans) agreed that Mr. Busby's conditions necessitating his post-accident surgeries preexisted the accident and probably would have necessitated surgery, absent the subject accident. Additionally, Dr. Jenkins testified that Mr. Busby's knee injury was an old one and he could not find any acute problem with the left knee. Dr. Eugenio F. Vargas diagnosed Mr. Busby with congenital and degenerative, not traumatically induced problems. Dr. Clifford and Dr. Kilroy testified that they would defer to the opinions of Dr. Vargas and Dr. Jenkins, respectively. Neither Dr. Jenkins nor Dr. Vargas would medically relate their findings at surgery to the subject accident. Finally, Dr. Robert Hall, Mr. Busby's family physician, would not attribute Mr. Busby's problems entirely to the accident. While these doctors, in general, acknowledged that trauma could aggravate preexisting conditions, the jury could have chosen to accept their more specific testimony that they could not say all of the injuries were traumatically induced.
Consequently, the jury could have found that the entirety of Mr. Busby's medical expenses were not compensable, as damages awarded for aggravation of a preexisting condition should not include the normal and natural results of the prior condition, including the medical treatment for the prior condition that a plaintiff would have required whether or not the subject accident had occurred. See Rochel v. Terrebonne Parish School Board, 93-0383 (La.App. 1st Cir. 5/20/94); 637 So.2d 753, 756, writ denied, 94-1613 (La. 10/7/94); 644 So.2d 633. On this same basis, it could have concluded that Mr. Busby was not entitled to recover all of his past and future lost wages. In light of these possible findings by the jury, we cannot say that the award of special damages constitutes an abuse of discretion.
Accordingly, this assignment of error is without merit.

*331 ASSIGNMENT OF ERROR NO. 6
Mr. Busby contends that the trial court erred in granting a directed verdict in favor of the agency.
Louisiana Code of Civil Procedure article 1810 provides as follows:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
A trial court has much discretion in determining whether or not to grant a motion for directed verdict. New Orleans Property Development, Ltd. v. Aetna Casualty and Surety Company, 93-0692 (La.App. 1st Cir. 4/8/94); 642 So.2d 1312, 1315; Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 and 92-1545 (La.App. 1st Cir. 3/11/94); 634 So.2d 466, 478, writ denied, 94-0906 (La. 6/17/94); 638 So.2d 1094; Barnes v. Thames, 578 So.2d 1155, 1162 (La.App. 1st Cir.), writ denied, 577 So.2d 1009 (La.1991). A motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. New Orleans Property Development, Ltd., 642 So.2d at 1315; Belle Pass Terminal, Inc., 634 So.2d at 478; Barnes, 578 So.2d at 1162. However, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. New Orleans Property Development, Ltd., 642 So.2d at 1315; Belle Pass Terminal, Inc., 634 So.2d at 478.
On appeal, the standard of review for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. New Orleans Property Development, Ltd., 642 So.2d at 1315; Belle Pass Terminal, Inc., 634 So.2d at 478. Furthermore, the propriety of a directed verdict must be evaluated in light of the substantive law underpinning the plaintiff's claims. New Orleans Property Development, Ltd., 642 So.2d at 1315; Belle Pass Terminal, Inc., 634 So.2d at 478.
Vicarious liability is based on La. C.C. art. 2320 which states in pertinent part: "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." Under this article, liability extends only to the employee's tortious conduct that is within the course and scope of the employment. Orgeron v. McDonald, 93-1353 (La. 7/5/94); 639 So.2d 224, 226; Emoakemeh v. Southern University, 94-1194 (La.App. 1st Cir. 4/7/95); 654 So.2d 474, 476.
The specific inquiry in determining whether an employee is within the course and scope of his employment is whether the employee's tortious conduct is so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest. LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974); Emoakemeh v. Southern University, 654 So.2d at 476-77; Weatherford v. Commercial Union Ins. Co., 93-0841 (La.App. 1st Cir. 5/20/94); 637 So.2d 1208, 1211, affirmed, 94-1793, 94-1927 (La. 2/20/95); 650 So.2d 763. Thus, the agency is vicariously liable for Mr. Mayer's actions only if he committed the tort in question while in the course and scope of his duties as an insurance agent.
In his case-in-chief, Mr. Busby questioned Mr. Mayer regarding his position at the agency and the reason for his presence at K *332 & B at the time of the accident. Mr. Mayer testified that he was an insurance agent for the agency as well as its president and a major stockholder at the time of the accident. He also had control over when he went to lunch and when he returned to work. At the time of the accident, Mr. Mayer testified he was on his lunch break purchasing shaving supplies before he went back to work. The uncontroverted testimony of Mr. Mayer reveals that he had no appointments scheduled on his way back to work and his activities at K & B were strictly of a personal nature. There was no testimony or other evidence to establish that Mr. Mayer was in the course and scope of his employment with the agency at the time of the accident.
We note that Mr. Busby had the burden of proving Mr. Mayer was in the course and scope of his employment when the accident occurred. After reviewing the record and the evidence submitted, we conclude that the facts and inferences are so overwhelmingly in favor of the agency on the vicarious liability issue that reasonable people could not reach a contrary verdict. See Williams v. Markel Lumber Co., 566 So.2d 446, 450 (La.App. 4th Cir.), writ denied, 569 So.2d 981 (La.1990); compare Howard v. City of Alexandria, 581 So.2d 321, 323 (La.App. 3d Cir.1991). Thus, the trial court did not abuse its discretion in granting a directed verdict in favor of the agency.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 7
Mr. Busby also complains about the trial court's denial of his motion for new trial. The basis of his motion for new trial was the jury's failure to award general damages where it had awarded special damages. Alternatively, Mr. Busby sought an additur because of the jury's failure to award all of his medical expenses, lost wages, and lost earning capacity damages.
A motion for a new trial should be granted when the verdict or judgment appears clearly contrary to the law and the evidence. La.C.C.P. art. 1972(1). Additionally, La.C.C.P. art. 1973 authorizes a trial court to grant a new trial in any case if there is good ground therefor. In a motion for new trial, the trial judge is free to evaluate the evidence without favoring either party; he may draw his own inferences and conclusion and may evaluate credibility of the witnesses to determine if the jury has erred in giving too much credence to an unreliable witness. Belle Pass Terminal, Inc., 634 So.2d at 492. The trial court has much discretion in determining whether to grant a motion for new trial. La.C.C.P. art. 1971; Belle Pass Terminal, Inc., 634 So.2d at 493. The denial of a motion for new trial should not be reversed unless there has been an abuse of discretion. Belle Pass Terminal, Inc., 634 So.2d at 493.
Moreover, this court has previously set forth the policy behind the decision to grant or deny a new trial as follows:
[T]he law is clear that the granting or denying of a motion for new trial rests within the wide discretion of the trial court and its determination shall not be disturbed absent a clear abuse of that discretion. Furthermore, the discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence.
Engolia v. Allain, 625 So.2d 723, 729 (La. App. 1st Cir.1993) (citations omitted).
Mr. Busby sought a new trial because the jury failed to award general damages and because based on the additional jury instruction given by the trial court, the jury may have placed the burden of proving comparative negligence on the plaintiff. The trial court determined that the ground regarding the failure to award general damages had merit and awarded a net $7,500.00 additur in general damages in lieu of granting a new *333 trial. As to all other bases of the motion for new trial, the trial court denied the motion.
We find that the net $7,500.00 additur cured any ground for the grant of a new trial that may have existed. See La.C.C.P. art. 1814. In light of the vast discretion of the trial court in granting or denying a new trial, we cannot say the trial court erred in denying a new trial on the other grounds. Moreover, plaintiff's additional jury instruction ground for a new trial was merely an attempt to obtain a review of the instruction to which plaintiff was not otherwise entitled because he did not timely specify the grounds of his previous objection to the additional instruction. Accordingly, Mr. Busby had no right to a review of the instruction in a post-trial setting.

DECREE
For the foregoing reasons, the reformed judgment of the trial court is AFFIRMED. Costs of this appeal are assessed to Mr. Busby.
FITZSIMMONS, J., concurs.
NOTES
[1] Although not articulated by the trial court or any of the parties in brief, the gross additur awarded was $15,000.00. We reach this conclusion because the amended judgment on the motion for new trial awarded Mr. Busby $7,500.00 in net general damages, denied his motion for new trial and affirmed all other aspects of the original judgment. In affirming all other aspects, the trial court necessarily affirmed the jury's assessment of 50% comparative fault to Mr. Busby. Accordingly, the gross additur must have been $15,000.00, else the reformed general damage award would have been $3,750.00, after the applicable reduction for Mr. Busby's comparative fault.
[2] We note that there is no evidence in the record of the actual date(s) of Mr. Busby's conviction(s), nor of the actual crime(s) for which he was convicted.
[3] Louisiana Code of Evidence article 609 provides in pertinent part:

A. General civil rule. For the purpose of attacking the credibility of a witness in civil cases, no evidence of the details of the crime of which he was convicted is admissible. However, evidence of the name of the crime of which he was convicted and the date of conviction is admissible if the crime:
(1) Was punishable by death or imprisonment in excess of six months under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party; or
(2) Involved dishonesty or false statement, regardless of the punishment.
B. Time limit. Evidence of a conviction under this Article is not admissible if a period of more than ten years has elapsed since the date of the conviction.
[4] Louisiana Code of Evidence article 608(B) provides that "[p]articular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 or as constitutionally required.

Thus, the provisions of article 609 only apply where the evidence of the conviction is being offered to attack the plaintiff's character for truthfulness. This is different from a situation wherein the evidence of the conviction is used to reveal an inconsistency in a prior statement by the witness about his medical condition in which case the evidence is not being offered to attack the witness' character for truthfulness as an ex-convict. See State v. Mitchell, 94-521 (La.App. 3d Cir. 11/2/94); 649 So.2d 569, 571 (recognizing that even evidence of other acts of misconduct is admissible when evidence of other acts tends to prove a material issue and has independent relevance other than showing that defendant is a man of bad character) (emphasis added).
[5] Louisiana Code of Evidence article 611(B) provides in pertinent part: "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Comment (h) to article 611 informs that the subject of attacking the credibility of a witness is covered by article 607.
[6] Louisiana Code of Evidence article 607(C) provides: "[e]xcept as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony."
[7] Louisiana Code of Evidence article 902 provides in pertinent part:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
* * * * * *
(2) Domestic public documents not under seal.
* * * * * *
(b) Certified Louisiana public documents.
A purported record, book, paper, or other document of the State of Louisiana, or of a department, board, or agency thereof or of a political subdivision of the state or a department, board, or agency of such a subdivision when certified as being the original by an officer or employee who identified his official position and who either has custody of the document or who is otherwise authorized to make such a certification.
* * * * * *
[8] Although medical records are normally not considered public, because of the nature of Mr. Busby's claim, he waived the health care provider-patient privilege. La.C.E. art. 510(B)(2)(a).
[9] Louisiana Code of Evidence article 607(D) provides:

D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
[10] In some instances, Mr. Busby stated that he could not recall whether he made the complaints documented in the records. This lack of recollection is the equivalent of a denial for purposes of laying the proper foundation for impeachment through extrinsic evidence. State v. Hicks, 554 So.2d 1298, 1303 (La.App. 1st Cir.1989), writ denied, 559 So.2d 1374 (La.1990), writ denied, 604 So.2d 1297 (La.1992).
[11] The jury verdict form completed by the jury clearly shows that nine of the twelve jurors found by a preponderance of the evidence that Mr. Busby suffered injury as a result of the accident involving Mr. Mayer. Pursuant to this finding, the jury awarded Mr. Busby special damages consisting of $2,350.00 in past medical expenses, $6,325.00 in loss of past income, and $6,325.00 in loss of future income or earning capacity. In all other respects, damages were denied. Had the jury not found causation between the accident and Mr. Busby's injuries, it would not have awarded damages.
[12] The record reflects that Mr. Busby consented to the net $7,500.00 additur, although he disagreed with the trial court's failure to grant a new trial on other grounds urged by him that were not related to the award of general damages.